UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re

ALLOU DISTRIBUTORS, INC., et al.,                    Chapter 7
                                                     Case No. 03-82321-ess
                    Debtors.                         (Substantively Consolidated)
-------------------------------------------------------------x
KENNETH P. SILVERMAN, as Chapter 7
Trustee of ALLOU DISTRIBUTORS, INC., et al.,

                    Plaintiff,

          -against-                                  Adv. Pro. No. 05-8109-ess

H.I.L. ASSOCIATES LTD., TEREZA
MERCHANDISING CORPORATION,
MORGREN CONSTRUCTION CORP., ISRAEL
GREENFIELD, HERBERT GREENFIELD and
THE ESTATE OF MORRIS GREENFIELD,
deceased,

                    Defendants.
-------------------------------------------------------------x

## MEMORANDUM DECISION ON MOTIONS TO DISMISS
## THE AMENDED COMPLAINT

Appearances:

Ronald J. Friedman, Esq.                    Shalom Jacob, Esq
Edward M. Flint, Esq.                       Louis Solomon, Esq.
Mark J. Friedman, Esq.                      Lorri E. Staal, Esq.
Silverman Perlstein & Acampora LLP          Dechert LLP
100 Jericho Quadrangle                      30 Rockefeller Plaza
Jericho, NY 11743                           New York, NY 10112
Attorneys for the Chapter 7 Trustee         Attorneys for H.I.L. Associates Ltd.,
                                            Tereza Merchandising Corporation,
Harold S. Berzow, Esq.                      Morgren Construction Corp. and
Michael S. Amato, Esq.                      Israel Greenfield
Ruskin Moscou Faltischek, P.C.
1425 RexCorp Plaza                          Solomon J. Jaskiel, Esq.
Uniondale, NY 11556                         275 Madison Avenue
Attorneys for the Estate of Morris          New York, NY 10016
Greenfield                                  Attorney for Herbert Greenfield

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are the motions of the above-captioned Defendants, H.I.L. Associates

Ltd. ("H.I.L"), Tereza Merchandising Corporation ("Tereza"), Morgren Construction Corp.

("Morgren"), Israel Greenfield ("I. Greenfield"), Herbert Greenfield ("H. Greenfield"), and the

Estate of Morris Greenfield ("Estate of M. Greenfield") (collectively, the "Defendants") to

dismiss the Amended Complaint (the "Motions to Dismiss the Amended Complaint").  The

Defendants bring these Motions to Dismiss pursuant to Rules 8(a), 9(b), 12(b)(1), and 12(b)(6)

of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rules

7008, 7009, and 7012 of the Federal Rules of Bankruptcy Procedure.  The Defendants argue that

the Plaintiff, Kenneth P. Silverman, as Chapter 7 trustee (the "Trustee") of the bankruptcy

estates of Allou Distributors, Inc., and other entities ("Allou" or the "Debtor"), does not have

standing to bring these claims under Rule 12(b)(1), that certain of these claims are barred by the

applicable statute of limitations, that these claims do not satisfy the pleading threshold of Rule

8(a), that these claims do not plead fraud with the particularity required by Rule 9(b), and that

these claims do not state a claim upon which can be granted as required by Rule 12(b)(6).

## Background

The Debtors' Bankruptcy Cases

On April 9, 2003, involuntary Chapter 11 petitions were filed against Allou Distributors,

Inc. ("ADI"), and three of its affiliates, M. Sobol, Inc., Direct Fragrances, Inc., and Standford

Personal Manufacturing Care, Inc. (the "Original Debtors"), by Congress Financial Corporation

("Congress"), Citibank, N.A. ("Citibank"), and LaSalle Business Credit, LLC ("LaSalle").  Case

No. 03-82321, Docket No.1.  The Original Debtors consented to entry of orders for relief under

Chapter 11, and on April 10, 2003, the Court issued orders for relief in each of the Original

Debtors' Chapter 11 cases. Case No. 03-82321, Docket Nos. 3, 4. The Original Debtors are wholly-owned subsidiaries of Allou Health Care, Inc. ("AHI"), a publicly traded Delaware corporation. On April 18, 2003, Congress, Citibank, and LaSalle filed an involuntary Chapter 11 petition against AHI, and by consent order entered on July 14, 2003, the Court entered an order for relief. Case No. 03-82662, Docket No. 1, 63.

On April 18, 2003, Congress, Citibank, and LaSalle filed involuntary Chapter 11 petitions against two of ADI's six subsidiaries, Trans World Grocers Inc. and Rona Beauty Supplies, Inc. Case No. 03-82660, Docket No.1; Case No. 03-82661, Docket No. 1. On May 1, 2003, the Court entered orders for relief in these Chapter 11 cases. Case No. 03-82660, Docket No. 9; Case No. 03-82661, Docket No. 9.

On April 25, 2003, voluntary Chapter 11 petitions were filed by ADI's four remaining subsidiaries, Core Marketing, Inc., HBA Distributors, Inc., HBA National Sales Corp., and Pastel Cosmetic & Beauty Aids, Inc. Case No. 03-82838, Docket No.1; Case No. 03-82840, Docket No. 1; Case No. 03-82841, Docket No. 1; Case No. 03-82839, Docket No. 1.

By order dated September 16, 2003, these Chapter 11 cases were converted to liquidation cases under Chapter 7 of the Bankruptcy Code. Case No. 03-82321, Docket No. 583. Kenneth P. Silverman was appointed as the Chapter 7 trustee. *Id.* These cases were substantively consolidated by order dated December 22, 2003. Case No. 03-82321, Docket No. 923.

The Debtors' Principals

Victor Jacobs and his two sons, Herman Jacobs and Jacob Jacobs, held approximately 61 percent of the voting stock of AHI. Amended Complaint ¶ 21. (Victor, Herman, Jacob, and Victor's son Aaron a/k/a Ari Jacobs are referred to as the "Jacobs.") Victor Jacobs, Herman

2

Jacobs, and Jacob Jacobs held senior executive positions as officers of AHI, and Victor Jacobs and Herman Jacobs served on its board of directors.  Amended Complaint ¶¶ 22-24.  On June 30, 2003, involuntary Chapter 7 bankruptcy petitions were filed against Victor Jacobs, Herman Jacobs, and Jacob Jacobs.  Amended Complaint ¶ 26.  Orders for relief were entered on September 9, 2003, and Allan B. Mendelsohn was appointed the Chapter 7 trustee.  Amended Complaint ¶ 28.  On June 17, 2004, Victor, Herman, Jacob and Aaron Jacobs were indicted in connection with their alleged scheme to defraud Allou.  Amended Complaint ¶ 29.

Procedural History

On March 4, 2005, the Trustee filed a complaint (the "Original Complaint") against H.I.L., Tereza, and Morgren (collectively, the "Corporate Defendants") in which he asserted avoidance and recovery claims based upon actual and constructive fraudulent transfers, preferential transfers, and unjust enrichment.  Adv. Pro. Docket No. 1.  On July 20, 2005, the Corporate Defendants filed a Motion to Dismiss the Complaint.  Adv. Pro. Docket No. 11.

On November 23, 2005, the Trustee filed an Amended Complaint (the "Amended Complaint") which names three additional defendants, Israel Greenfield, Herbert Greenfield, and the Estate of Morris Greenfield (collectively, the "Individual Defendants").  The Amended Complaint also asserts three claims not asserted in the Original Complaint, the First, Second, and Third Claims for Relief.  Adv. Pro. Docket No. 14.

On April 10, and 11, 2006, the Defendants filed motions to dismiss the Amended Complaint.  Adv. Pro. Docket Nos. 18, 20, 21.  On December 1, 2006, the Trustee filed an Affirmation in Opposition to the Motions.  Adv. Pro. Docket No. 23.  On March 30, 2007, the Defendants filed Reply Memoranda of Law in Support of the First Motions to Dismiss the

Amended Complaint.  Adv. Pro. Docket Nos. 28, 30, 31.

At a status conference held on May 30, 2007, the Defendants were granted leave to file new motions to dismiss following their review of the pleadings in *Silverman v. KPMG LLP (In re Allou Distributors, Inc.)*, Adv. Pro. No. 04-8384.  The pending motions to dismiss were withdrawn and a scheduling order was entered directing the Defendants to respond to the Amended Complaint.  Adv. Pro. Docket No. 32.

On July 27, 2007 the Estate of M. Greenfield filed a motion to dismiss the Amended Complaint and a Memorandum of Law in Support of Motion to Dismiss Adversary Proceeding on Behalf of Defendant Estate of Morris Greenfield (the "Estate of M. Greenfield Mem.").  Adv. Pro. Docket Nos. 36, 37.  On July 30, 2007, the Corporate Defendants and I. Greenfield (the "Tereza Defendants"), filed a motion to dismiss the Amended Complaint and The Tereza Defendants' Memorandum of Law in Support of their Motion for an Order Dismissing the Trustee's Amended Complaint (the "Tereza Defendants' Mem.").  Adv. Pro. Docket No. 38.  On July 30, 2007,  H. Greenfield filed a motion to dismiss the Amended Complaint and Herbert Greenfield's Memorandum of Law in Support of his Motion to Dismiss the Amended Complaint (the "H. Greenfield Mem.").  Adv. Pro. Docket No. 39.

The Trustee filed a Memorandum in Opposition to the Motions to Dismiss the Amended Complaint (the "Trustee's Mem.") on August 27, 2007.  Adv. Pro. Docket No. 43.  On September 14 and 17, 2007, the Defendants filed reply memoranda in further support of their motions to dismiss the Amended Complaint (the "Teresa Reply Mem.", the "H. Greenfield Reply Mem.", and the "Estate of M. Greenfield Reply Mem.").  Adv. Pro. Docket Nos. 45, 46, 47.  On November 7, 2007, the Estate of M. Greenfield and the Tereza Defendants filed supplemental

4

memoranda of law in further support of the motions to dismiss the Amended Complaint (the

"Tereza Supp. Mem." and the "Estate of M. Greenfield Supp. Mem.").  Adv. Pro. Docket Nos.

51, 52.  On November 21, 2007, the Trustee filed a supplemental memorandum of law in further

opposition (the "Trustee's Supp. Mem.").  Adv. Pro. Docket No. 54.

The Amended Complaint

The Trustee asserts twenty-three claims for relief against the Defendants.[1]  The Trustee

alleges that the Defendants aided and abetted the Jacobs' fraud and the Jacobs' breach of

fiduciary duty.[2]  The Trustee also seeks recovery from the Defendants under common law fraud.[3]

The Trustee seeks to avoid and recover alleged fraudulent transfers from the Corporate

Defendants based upon theories of actual and constructive fraud and unjust enrichment.[4]  He also

seeks to avoid and recover from Tereza certain alleged preferential transfers.[5]

The following is a summary of certain of the allegations of the Amended Complaint,

which are assumed to be true solely for the purpose of deciding these Motions to Dismiss.  *See*

*Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).

*The Jacobs' Alleged Fraudulent Scheme*

_____

[1]  The Eleventh through Fifteenth Claims for Relief are asserted against Hills
Merchandising, which is not named as a defendant.  On March 21, 2008, the Trustee filed a
Notice of Dismissal of Trustee's Eleventh, Twelfth, Thirteenth, Fourteenth and Fifteenth Claims
for Relief in the Amended Complaint.  Adv. Pro. Docket No. 60.

[2]  Amended Complaint, First Claim for Relief, Second Claim for Relief.

[3]  Amended Complaint, Third Claim for Relief.

[4]  Amended Complaint, Fourth through Tenth Claims for Relief, Sixteenth through
Twenty-Second Claims for Relief, Twenty-Fourth through Twenty-Eighth Claims for Relief.

[5]  Amended Complaint, Twenty-Third Claim for Relief.

The Amended Complaint states that this adversary proceeding arises out of a "long-running and massive fraudulent scheme" by the Jacobs and others through which millions of dollars of Allou's assets were fraudulently diverted. Amended Complaint ¶¶ 113-14. The Trustee alleges that "[h]undreds of millions of dollars advanced to Allou by its lenders was subsequently transferred to other companies owned or controlled by the Jacobs Family to further perpetuate the fraudulent scheme." Amended Complaint ¶ 114. The Trustee alleges that the Jacobs "enlisted the services of unrelated entities controlled by persons with familial, personal and community ties to the Jacobs, including the Defendants." Amended Complaint ¶ 116.

The Amended Complaint describes several aspects of the Jacobs' fraudulent scheme, including the inflation of Allou's accounts receivable and inventory purchases by the creation of fictitious sales and inventory purchases and the diversion of Allou's funds to purchase real property in Brooklyn, New York (the "Kent Avenue Property"), through a series of real estate transactions that yielded no benefit to Allou.

*The Alleged Fictitious Sales and Inventory Purchases*

The Amended Complaint states that "Allou's accounts receivable and inventory were falsely and fraudulently inflated through [the use of] two distinct sets of books and records . . . and through the use of fictitious sales personnel, fictitious vendors and fictitious purchases of non-existent inventory." Amended Complaint ¶ 122. The Trustee alleges that as of April 24, 2003, the date that Allou filed its Allou's Form 8-K with the Securities and Exchange Commission (the "SEC"), accounts receivable and inventory may have been overstated by $110 to $115 million. Amended Complaint ¶ 123.

The Trustee alleges that "[a]s a result of the Jacobs' fraudulent and artificial inflation of

6

Allou's accounts receivable and inventory balances, Allou borrowed $200,000,000 from its lenders." Amended Complaint ¶ 134. He alleges:

> The vast majority of [these funds] was never utilized by Allou for its own benefit, but rather was either (a) directly stolen by, or transferred without consideration to, the Jacobs or their confederates, or (b) cycled through a series of sham transactions . . . in order to protect the illusion of Allou's financial prosperity and propagate the Jacobs' fraud while actively concealing Allou's deepening and irretrievable insolvency.

Amended Complaint ¶ 135.

The Amended Complaint states that the Defendants participated in the Jacobs' fraudulent scheme to inflate Allou's accounts receivable and inventory purchases in several ways. The Trustee alleges that at the direction of the Individual Defendants, the Corporate Defendants engaged "in numerous 'round-trip' transactions with Allou and entities controlled by the Jacobs" which permitted the Jacobs "to create bogus sales and inventory purchases entered on the books of Allou." Amended Complaint ¶¶ 147.

The Trustee also alleges that the Jacobs "laundered Allou money through Tereza for the purpose of funneling Allou's funds to Satmar community organizations." Amended Complaint ¶ 152. The Amended Complaint states that "on November 15, 1999, one or more of the Jacobs caused Allou to transfer $200,000 to Tereza" and that "[t]his amount was booked by Allou as a purchase of inventory, but Allou received nothing for this fraudulent transfer." Amended Complaint ¶ 153. The Trustee alleges that one day later, on November 16, 1999, Tereza transferred $200,000, to two religious and/or educational institutions in the Satmar community. Amended Complaint ¶ 154. The Trustee alleges that on December 23, 1999, the Jacobs caused Allou to transfer $50,000, to Tereza, which was also booked by Allou as a purchase of inventory, but that Allou did not receive any consideration for this transfer. Amended Complaint ¶ 155.

The Amended Complaint states that on December 28, 1999, Tereza transferred $50,000 to a religious or educational institution in the Satmar community.  Amended Complaint ¶ 156.

The Trustee also alleges that the Corporate Defendants received millions of dollars directly in connection with fictitious purchases of goods.  Amended Complaint ¶¶ 146, 237-49.  The Amended Complaint states that at "the time that  the Corporate Defendants were being paid over $32 million by Allou for fraudulent inventory transactions . . . [from January 1997 through March 2003], the Corporate Defendants were paying to Olbex [International Trading Co., Ltd. ("Olbex")] more than $90 million."  Amended Complaint ¶ 219.  The Amended Complaint states that Olbex was an entity controlled by the Jacobs and used by them for "laundering money, including money funneled through the Corporate Defendants by the Jacobs."  Amended Complaint ¶¶ 220-21.

The Trustee alleges that the "end result of the transactions with the Defendants was that approximately $20,306,990 in fictitious sales and $22,603,587 in fictitious inventory purchases were recorded on Allou's books and records."  Amended Complaint ¶ 149.

## The Alleged Kent Avenue Condominium Scheme

The Trustee also alleges that the Defendants participated with the Jacobs in the acquisition of the Kent Avenue Property with funds diverted from Allou.  The Trustee alleges that some $14,959,000 of Allou's funds were used to purchase the Kent Avenue Property and construct six buildings containing over 180 condominium units (the "Kent Avenue Condominiums").  Amended Complaint ¶ 169.

*The Purchase of the Kent Avenue Property*

The Trustee alleges that the Kent Avenue Property was purchased by Kent Rush Realty Corp., "an entity controlled by the Jacobs, and whose president was Herman Jacobs." Amended Complaint ¶ 157. The Amended Complaint states that the funds used to purchase the Kent Avenue Property "came from Allou through entities controlled or owned by the Jacobs [the 'Controlled Entities']."[6] Amended Complaint ¶ 162. The Trustee alleges that these funds were transferred from Allou to the Controlled Entities and that these transfers were concealed by the Jacobs through the use of entries on Allou's books and records to make it appear that Allou was paying for merchandise, but that Allou did not receive any consideration for these transfers. Amended Complaint ¶¶ 173-74.

The Trustee alleges that "millions of dollars were funneled to the Defendants . . . by the use of fraudulent and fictitious inventory purchases." Amended Complaint ¶ 173. The Trustee also alleges that on "December 16, 1998, Allou issued six wire transfers totaling $5,570,000 that were sent to the account of Kimberly [a Controlled Entity]" and that "between December 16, 1998 and December 29, 1998, at least $4,999,965 [of these funds] were transferred to a Eurofactors[7] account in Switzerland." Amended Complaint ¶¶ 180-81. The Amended Complaint states that "between October 13, 1999 and July 3, 2000 there were twelve wire transfers from Allou to Eurofactors in the total amount of $8,393,828.43" and that "[t]hese

---

[6] The Amended Complaint identifies the Controlled Entities as SE-Roebuck Ltd., Arrow Distributing Corp., Buy & Save Trading Corp., Ever Ready First Aid Medical Supply Corp. d/b/a A&M Enterprises, T.J. Associates, LLC, Capital Sales Corp., Impax Trading Corporation a/k/a Impax Trading Inc., and Kimberly Trading & Holding Ltd. Amended Complaint ¶ 173.

[7] The Trustee alleges that Eurofactors International Inc. "was used to fraudulently divert money from Allou and launder the monies stolen by the Jacobs from Allou." Amended Complaint ¶ 178.

transfers were recorded on the records of Allou as payments to [Olbex] for certain invoices, all of which were fictitious." Amended Complaint ¶ 182. The Trustee alleges that on December 21, 25, and 28, 1998, Allou issued wire transfers totaling $2,950,000, to various Controlled Entities, and that Allou did not receive any consideration for these transfers. Amended Complaint ¶¶ 184-85. And the Trustee alleges that on December 29, 1998, $7.5 million was transferred from Eurofactors and the Controlled Entities to an attorney trust account held by Leon Traube, Esq., an attorney who represented Allou and the Jacobs in various transactions. Amended Complaint ¶ 159, 187.

The Amended Complaint states that at the time of the purchase, Kent Rush Realty Corp. executed a $5 million mortgage to K.E.R.U. Realty Corp. ("K.E.R.U."), and a $2 million mortgage to 2165 K-R Realty Corp. ("2165 K-R"). Amended Complaint ¶ 157. The Trustee alleges that M. Greenfield was "a principal and/or owner of both 2165 K-R and K.E.R.U. and signed numerous documents related to the Kent Avenue Condominiums and Kent Avenue Property." Amended Complaint ¶ 161. The Trustee alleges that "[t]he transaction was structured to make it appear that Kent Rush Realty borrowed $7 million from K.E.R.U. and 2165 K-R," but that neither K.E.R.U. nor 2165 K-R advanced any funds to pay for the purchase. Amended Complaint ¶¶ 190-91.

### *The Development of the Kent Avenue Condominiums*

The Trustee alleges that "[a]fter the purchase of the Kent Avenue Property, the Jacobs . . . continued to fraudulently divert funds from Allou through [certain of the Controlled Entities], which funds were used to construct the Kent Avenue Condominiums." Amended Complaint ¶ 193. The Trustee alleges that DJR Construction LLC ("DJR Construction"), a general contractor

of which Aaron Jacobs was a principal, agreed to serve as the contractor for the construction of

the Kent Avenue Condominiums, and that the funds used to pay expenses related to the

construction of the condominiums "were obtained from monies fraudulently diverted by the

Jacobs . . . from Allou to one or more of the Controlled Entities."  Amended Complaint ¶¶ 163,

194-95.

The Trustee alleges that on January 19, 1999, $160,000, was transferred from Leon

Traube's attorney trust account to DJR Construction to fund operating expenses.  Amended

Complaint ¶ 195.  The Trustee also alleges that from February 25, 1999, to September 13, 2000,

the Controlled Entities transferred to DJR Construction at least $2,780,000, in twenty-nine

transfers, which were made with funds illegally diverted by the Jacobs to the Controlled Entities.

Amended Complaint ¶¶ 196-97.  And the Amended Complaint states that from September 25,

2000, to February 7, 2003, the Controlled Entities made some fifty-three transfers of funds

diverted by the Jacobs totaling at least $3,435,000.  Amended Complaint ¶¶ 201-02.

### The Bedford Wall Transfers

The Trustee alleges that in September 2000, Bedford Wall Realty Corp. ("Bedford Wall

Realty"), Kent Rush Realty, and 2165 K-R entered into an agreement (the "Spreader

Agreement") providing that the $2 million lien given to 2165 K-R was spread to cover real

property owned by Bedford Wall Realty located at Bedford Avenue, Brooklyn, New York (the

"Bedford Wall Property").  Amended Complaint ¶ 211.  The Amended Complaint states that at

the same time, Kent Rush Realty and 2165 K-R entered into an agreement to release the Kent

Avenue Property from the $2 million mortgage held by 2165 K-R.  *Id.*  The Trustee alleges that

as a result of these transactions, the Bedford Wall Property was substituted for the Kent Avenue

Property as security for the mortgage held by 2165 K-R.  Amended Complaint ¶ 212.

The Trustee further alleges that in July 2003, Bedford Wall Realty transferred the Bedford Wall Property to 724 Bedford LLC, and "[a]t the same time, the [2165 K-R mortgage] was transferred to Tereza LLC by assignment of mortgage . . . which assignment was executed by H. Greenfield."  Amended Complaint ¶ 213.  The Trustee alleges that Bedford Wall Realty, 724 Bedford LLC, and Tereza LLC "are directly or indirectly owned and/or controlled by the Jacobs" and that "the assignment of the [2165 K-R Mortgage] and the transfer of the Bedford Wall Property were done to further conceal the fact that the [2165 K-R Mortgage] had been funded by monies fraudulently diverted from Allou."  Amended Complaint ¶ 216.

### Discussion

#### The Standard for Dismissal Under Rule 12(b)(6)

In reviewing a complaint for sufficiency under Rule 12(b)(6), the court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984).  The court accepts as true the well-pleaded factual allegations made by the plaintiff, and "must draw all reasonable inferences in favor of the plaintiff." *Bernheim*, 79 F.3d at 321.  *See Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001), *cert. denied*, 535 U.S. 1054 (2002); *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

The Second Circuit has observed that in addition to the factual allegations contained in the complaint, the court may also consider the contents of any "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may

be taken, or to documents either in the plaintiffs' possession or of which plaintiffs had

knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d

Cir. 1993).

This standard requires a plaintiff to do more than simply speculate about circumstances

that might conceivably give rise to a claim for relief.  As the Supreme Court recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than labels and conclusions, and a
> formulaic recitation of the elements of a cause of action will not do.  Factual
> allegations must be enough to raise a right to relief above the speculative level on
> the assumption that all the allegations in the complaint are true (even if doubtful
> in fact).

*Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007) (citations and

quotations omitted).  That is, a plaintiff must allege "enough facts to state a claim to relief that is

plausible on its face" in order to state a claim that survives scrutiny under Rule 12(b)(6).  *Bell

Atlantic*, 127 S. Ct. at 1974.  *See Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (the *Bell

Atlantic* standard "obliges a pleader to amplify a claim with some factual allegations in those

contexts where such amplification is needed to render the claim plausible").  Thus, a claim may

be sustained only if the plaintiff has "nudged [its] claims across the line from conceivable to

plausible . . . ." *Bell Atlantic*, 127 S. Ct. at 1974.  *See also Goldstein v. Pataki*, 516 F.3d 50, 56

(2d Cir. 2008).

The Standard for Dismissal Under Rule 9(b)

Rule 9(b) raises the bar for certain types of claims at the pleading stage.  It requires that

in "all averments of fraud or mistake, the circumstances constituting fraud or mistake . . . be

stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person

may be averred generally." FED. R. CIV. P. 9(b). Rule 9(b) serves several purposes, including

"(1) to provide a defendant with fair notice of the claims against him; (2) to protect a defendant

from harm to his reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the

number of strike suits." *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 285-

86 (S.D.N.Y. 1998). *See O'Brien v. Price Waterhouse*, 740 F. Supp. 276, 279 (S.D.N.Y. 1990),

*aff'd*, 936 F.2d 674 (2d Cir. 1991).

To satisfy Rule 9(b)'s pleading requirements "'a complaint must allege with some

specificity the acts constituting fraud . . . conclusory allegations that defendant's conduct was

fraudulent or deceptive are not enough.'" *Silverman v. Actrade Capital, Inc. (In re Actrade Fin.*

*Techs. Ltd.)*, 337 B.R. 791, 801 (Bankr. S.D.N.Y. 2005) (quoting *Odyssey Re (London) Ltd. v.*

*Stirling Cooke Brown Holdings, Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000)).

Rule 9(b) requires that allegations of fraudulent misrepresentations must "'(1) specify the

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

and when the statements were made, and (4) explain why the statements were fraudulent.'"

*Shields v. Citytrust Bankcorp, Inc.*, 25 F.3d 1124, 1127-28 (2d Cir. 1994) (quoting *Mills v. Polar*

*Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

While Rule 9(b) provides that "intent . . . may be averred generally," plaintiffs are

required "to allege facts that give rise to a strong inference of fraudulent intent." *Shields*, 25

F.3d at 1128. The Second Circuit has found that a strong inference of fraudulent intent "may be

established either (a) by alleging facts to show that defendants had both motive and opportunity

to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of

conscious misbehavior or recklessness." *Shields*, 25 F.3d at 1128.

14

A more liberal standard has been applied to fraud allegations in bankruptcy cases. *See, e.g., Nisselson v. Ford Motor Co. (In re Monahan Ford Corp. of Flushing)*, 340 B.R. 1, 21 (Bankr. E.D.N.Y. 2006); *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 498 (N.D. Ill. 1998); *Harrison v. Entm't, Inc. (In re Rave Commc'ns, Inc.)*, 138 B.R. 390, 396 (Bankr. S.D.N.Y. 1992). This is because in such cases, "it is often the trustee, a third party, who is pleading fraud on secondhand information." *Hassett v. Zimmerman (In re O.P.M. Leasing Servs., Inc.)*, 32 B.R. 199, 202 (Bankr. S.D.N.Y. 1983). As one court found, "[s]ince a bankruptcy trustee rarely has personal knowledge of the events preceding his appointment, he can plead *scienter* based upon information and belief provided he pleads the basis of his belief." *In re White Metal Rolling & Stamping Corp*., 222 B.R. 417, 428 (Bankr. S.D.N.Y. 1998). *See Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711, 717 (Bankr. D. Del. 2005).

The particularity requirement of Rule 9(b) applies only if actual, as opposed to constructive, fraud is alleged. *In re Actrade Fin. Techs. Ltd.*, 337 B.R. at 801-02. Thus, for example, Rule 9(b) does not apply to constructive fraudulent transfer claims under Section 548(a)(1)(B) and applicable state law, because such claims are not based on fraud but are based on the transferor's financial condition and the value given in exchange by the transferee. *See, e.g., In re Global Link Telecom Corp.*, 327 B.R. at 717; *In re White Metal Rolling & Stamping Corp*., 222 B.R. at 428; *S.I.P.C. v. Stratton Oakmont*, 234 B.R. 293, 319 (Bankr. S.D.N.Y. 1999).

<u>The Standard for Dismissal Under Rule 8(a)</u>

To survive a motion to dismiss under Rule 8(a), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a).

*See Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson*, 127 S. Ct. at 2200 (quoting *Bell Atlantic*, 127 S. Ct. at 1964).

As one court observed:

> The purpose of the statement is to provide "fair notice" of the claim and "the grounds upon which it rests."  *Enron Corp. v. J.P. Morgan Sec., Inc. (In re Enron Corp.)*, 325 B.R. 671 (Bankr. S.D.N.Y. 2005) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  In other words, "[Rule 8] is designed to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery."  *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

*Official Comm. of Unsecured Creditors of 360Networks (USA), Inc. v. Pirelli Commc'ns Cables & Sys. USA LLC (In re 360Networks (USA), Inc.)*, 367 B.R. 428, 432 (Bankr. S.D.N.Y. 2007).

Rule 8(a) sets a lower bar than Rule 12(b)(6) or Rule 9(b), and "does not require a plaintiff to plead the legal theory, facts, or elements underlying his claim."  *Koch v. Hicks (In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.)*, 457 F. Supp. 2d 298, 303-04 (S.D.N.Y. 2006) (quotations and citations omitted).

## The Motions to Dismiss

### Whether the Trustee Has Standing

Standing to bring an action is a "threshold issue in all cases since putative plaintiffs lacking standing are not entitled to have their claims litigated in federal court."  *Shearson Lehman Hutton Inc. v. Wagoner*, 944 F.2d 114, 117 (2d Cir. 1991).  Standing requires a plaintiff to have a "'personal stake in the outcome of the controversy. . . . [and] assert his own legal rights and interests'" rather than those of a third party.  *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86

(2d Cir. 2000) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)). *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1091 (2d Cir. 1995) (a plaintiff must allege concrete, particularized injury to itself that is likely to be redressed by the relief sought).

A trustee's standing "coincides with the scope of the powers the Bankruptcy Code gives a trustee" and derives from the estate's right to sue. *Wagoner,* 944 F.2d at 118. As the Second Circuit observed:

> In a bankruptcy proceeding, state law determines whether a right to sue belongs to the debtor or to the individual creditors. The Bankruptcy Code places a trustee in the shoes of the bankrupt corporation and affords the trustee standing to assert any claims that the corporation could have instituted prior to filing its petition for bankruptcy.

*Mediators, Inc. v. Manney (In re Mediators, Inc.)*, 105 F.3d 822, 825-26 (2d Cir. 1997) (citations omitted).

In *Shearson Lehman Hutton Inc. v. Wagoner*, the Second Circuit determined that "[i]t is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Wagoner,* 944 F.2d at 118 (citing *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 434 (1972)). "A claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." *Wagoner,* 944 F.2d at 120. This rule gives effect to "'the fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation.'" *Breeden v. Kirkpatrick and Lockhart L.L.P. (In re Bennett Funding Group, Inc.)*, 336 F.3d 94, 100 (2d Cir. 2003) (quoting *Wight*, 219 F.3d at 86).

The Wagoner rule is qualified by the adverse interest exception. "'Under New York law,

the adverse interest exception rebuts the usual presumption that the acts and knowledge of an agent acting within the scope of employment are imputed to the principal.'" *Wight,* 219 F.3d at 87 (quoting *In re Mediators*, 105 F.3d at 827). As a result, a trustee has standing to sue where a manager or officer acted "entirely in his own interests and adversely to the interests of the corporation." *Wight*, 219 F.3d at 87. But "[t]he exception is a narrow one and applies only when the agent has 'totally abandoned' the principal's interest." *In re Mediators*, 105 F.3d at 827 (quoting *Center v. Hampton Affiliates*, 66 N.Y. 2d 782, 784 (1985)). "The exception does not apply simply because the agent has a conflict of interest or does not act primarily for his principal." *Grumman Olson Indus., Inc. v. McConnell (In re Grumman Olson Indus., Inc.)*, 329 B.R. 411, 425 (Bankr. S.D.N.Y. 2005).

And the adverse interest exception is subject to the sole actor rule. Under the sole actor rule, the acts of a wrongdoer agent are imputed to the principal "where the principal and agent are one and the same." *In re Mediators*, 105 F.3d at 827. Under the sole actor rule, the adverse interest exception "does not apply if the wrongdoing agent is the corporation's sole shareholder, or where all of the corporation's management participate in the wrongdoing." *In re Grumman Olson Indus., Inc.*, 329 B.R. at 425. That is, "imputation applies unless at least one decisionmaker in a management role or amongst the shareholders is innocent and could have stopped the fraud." *In re Bennett Funding Group, Inc.*, 336 F.3d at 101. *See Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P.*, 212 B.R. 34, 36 (Bankr. S.D.N.Y. 1997).

As a result, a trustee must allege that an inside decision-maker or shareholder was "innocent of the [agent's] misconduct, unaware of it, and able to prevent it had the misconduct been known." *Ernst & Young v. Bankr. Servs., Inc.* (*In re CBI Holding Co.*), 311 B.R. 350, 371

18

(Bankr. S.D.N.Y. 2004).  *See Wechsler*, 212 B.R. at 36; *In re Sharp Int'l Corp. v. KPMG LLP (In re Sharp Int'l Corp.)*, 319 B.R. 782, 788 (Bankr. E.D.N.Y. 2005).  Viewed another way, if a trustee alleges the existence of an innocent insider, the sole actor rule will not bar standing.  *In re Bennett Funding Group, Inc.*, 336 F.3d at 101; *In re CBI Holding Co.,* 311 B.R. at 373; *In re Sharp Int'l Corp.*, 319 B.R. at 788.

Some courts also recognize an innocent insider exception to the Wagoner rule.  The innocent insider exception provides that the acts and knowledge of management will not be imputed to the company if there are innocent members of management who "could and would have prevented the misconduct, had they known of it."  *In re CBI Holding Co.,* 311 B.R. at 372. *But see In re Bennett Funding Group, Inc.,* 336 F.3d at 101 ("we need not resolve the question of whether the presence of innocent directors would provide the trustee with standing where fewer than all shareholders are implicated in the fraud."); *In re CBI Holding Co.,* 311 B.R. at 372 (declining to adopt an innocent insider exception).

The Estate of M. Greenfield argues, among other things, that the Trustee's First, Second, and Third Claims for Relief should be dismissed because under the Wagoner rule, the Trustee does not have standing to assert those claims.  Estate of M. Greenfield Mem. at 16-17.  The Estate of M. Greenfield urges that the Wagoner rule is "regularly applied at the pleading stage" to dismiss complaints for lack of standing.  Estate of M. Greenfield Reply Mem. at 6.

The Estate of M. Greenfield also argues that the adverse interest exception does not apply because some of the Jacobs' fraudulent activities benefitted Allou.  Estate of M. Greenfield Mem. at 16.  In particular, the Estate of M. Greenfield argues that the Trustee acknowledges that lenders extended credit to Allou based on artificially inflated inventory and accounts receivable.

Estate of M. Greenfield Mem. at 16-17.  The Estate of M. Greenfield states that the Jacobs'

fraudulent activities served Allou's corporate purposes so that "[t]here is no support for the

proposition that the perpetrators of the fraud in the Allou bankruptcy were acting *solely* for their

own benefit."  Estate of M. Greenfield Mem. at 17.

       The Estate of M. Greenfield further argues that even if the adverse interest exception

applies, the sole actor rule deprives the Trustee of standing because he does not allege that there

existed at least one innocent insider who could have stopped the fraud.  Estate of M. Greenfield

Mem. at 19; Estate of M. Greenfield Reply Mem. at 8.  Any such innocent insider is not

blameless because he or she ceded control to the Jacobs and "permitted the Jacobs to operate the

Debtors with impunity" for more than six years.  Estate of M. Greenfield Mem. at 20.  *See* Estate

of M. Greenfield Reply Mem. at 8-9.  The Estate of M. Greenfield argues that the insiders cited

by the Trustee are not innocent since "the Trustee himself previously sued these very same

Innocent Insiders for negligence."  Estate of M. Greenfield Reply Mem. at 9.  And the Estate of

M. Greenberg notes that the innocent insider exception "may not be the rule in the Second

Circuit," and that even if it is, for these same reasons, it does not apply.  Estate of M. Greenfield

Mem. at 20.  *See* Estate of M. Greenfield Reply Mem. at 10.

       The Tereza Defendants argue, among other things, that the Wagoner rule bars the

Trustee's standing to assert the First, Second, and Third Claims for Relief.  Tereza Defendants'

Mem. at 24-25; Tereza Defendants' Reply Mem. at 6.  They note that the Second Circuit and

lower courts "have not hesitated to apply the Wagoner Rule to dismiss a complaint when

appropriate."  Tereza Defendants' Reply Mem. at 7.

       The Tereza Defendants also argue that the adverse interest exception to the Wagoner rule

applies only in those narrow circumstances where, unlike here, management "'totally' abandons the debtor's interests." Tereza Defendants' Mem. at 25. *See* Tereza Defendants' Reply Mem. at 8-9. They argue that the Trustee has not alleged that the Jacobs' actions had "*no corporate purpose*." Tereza Defendants' Reply Mem. at 11. They also note that "the Jacobs raised $200 million in funding for Allou, and Allou had more than $150 million in legitimate inventory and receivables, even *after* taking into account the Jacobs' fraudulent activity." Tereza Defendants' Mem. at 25-26. *See* Tereza Defendants' Reply Mem. at 10. And they assert that Allou's public filings show that its inventory and accounts receivable were overstated by some $35 million and $75 million to $80 million respectively, while the Jacobs received $200 million in funding from outside lenders. Tereza Defendants' Reply Mem. at 10.

The Tereza Defendants further argue that the adverse interest exception does not apply because the Trustee's reliance on the doctrine of deepening insolvency is misplaced. Tereza Defendants' Reply Mem. at 12. They urge that the doctrine "is simply not relevant here, as such claims belong to *creditors*, not the *debtor*, under New York law." *Id.*

And the Tereza Defendants argue that if the adverse interest exception applies, the sole actor rule defeats that exception. Tereza Defendants' Reply Mem. at 12, 21-25. They argue that the Trustee does not allege that specifically identified innocent decision-makers had control over Allou or the Jacobs' fraudulent activities, and that the Amended Complaint does not identify any innocent insiders, middle-managers, minority shareholders, or independent directors with decision-making responsibility. Tereza Defendants' Reply Mem. at 15-19. The Tereza Defendants submit that the Trustee's "conclusory allegations that [minority shareholders] could have and would have stopped the Jacobs' fraud are entirely insufficient." Tereza Defendants'

Reply Mem. at 18.

The Tereza Defendants also argue that the innocent insider exception to the Wagoner rule has been rejected by courts in this Circuit, and that even if it is valid, it does not apply because "the Amended Complaint utterly fails to allege any facts indicating the existence of a single innocent decision-maker at Allou who had the power to stop the Jacobs' fraud." Tereza Defendants' Reply Mem. at 12-13.

The Trustee disputes the Defendants' arguments that he lacks standing under the Wagoner rule. Trustee's Mem. at 10. The Trustee notes that the Wagoner rule is subject to the adverse interest exception and argues that the Jacobs conducted their fraudulent activities entirely for their own benefit and "to the complete detriment of Allou and Allou's innocent community of interests." Trustee's Mem. at 16. *See* Trustee's Mem. at 11. For these reasons, the Trustee asserts that the Jacobs "totally abandoned" Allou's interests. Trustee's Mem. at 16.

The Trustee notes:

> Although the concept of "total abandonment" has never been explicitly defined, looting of the corporation, the diversion of corporate assets and opportunities by its management or the deepening insolvency of the corporation through the improper actions of management, all of which has been alleged in the Amended Complaint, have been the decisive factors in several decisions.

Trustee's Mem. at 12.

In this context, the Trustee argues that the Jacobs' schemes to loot Allou, deepen its insolvency, and keep it "'perched on the brink of disaster'" cannot be construed to provide a benefit to the firm. Trustee's Mem. at 17 (quoting *Mirror Group Newspapers, P.L.C. v. Maxwell Newspapers, Inc. (In re Maxwell Newspapers, Inc.)*, 164 B.R. 858 (Bankr. S.D.N.Y. 1994)). *See* Trustee's Mem. at 16. The Trustee argues that the "Amended Complaint alleges, and the

22

Defendants freely acknowledge, that the Jacobs were engaged in a multifaceted, far-reaching scheme to fraudulently continue Allou past the point of insolvency so that they could systematically loot its assets for their benefit and the benefit of their confederates." Trustee's Mem. at 20.

The Trustee argues that the adverse interest exception applies even if the Jacobs' fraudulent conduct yielded apparent benefits to Allou. Trustee's Mem. at 16-20. He notes that "[t]he fact that funds were recycled through Allou in order to inflate its sales and to facilitate the Jacobs' fraud is not inconsistent with the Jacobs' total abandonment of Allou's interest." Trustee's Mem. at 20. The Trustee argues that any apparent short-term benefit conferred on Allou as a result of the Jacobs' fraud cannot be considered a true benefit in the context of "widespread corporate looting and deepening insolvency." Trustee's Mem. at 16. *See* Trustee's Mem. at 20.

The Trustee further argues that the sole actor rule does not apply because:

The Amended Complaint amply alleges that there were relevant members of management and among the minority shareholders who were *not* so dominated by the Jacobs that they were totally powerless to stop the fraud had it been disclosed. At the very least, those issues cannot be determined upon the Defendants' motion to dismiss.

Trustee's Mem. at 23. In particular, the Trustee notes that the Amended Complaint alleges that Allou had innocent independent directors and minority shareholders who could have taken steps to stop the Jacobs' fraud. Trustee's Mem. at 23-26.

Finally, the Trustee argues that at this stage, "[a]ll that is required . . . is that the Amended Complaint alleges the existence of innocent insiders with the ability to end the fraud and that the Jacobs were not the sole actors for Allou." Trustee's Mem. at 24. The Trustee adds

23

that "the key 'question of whether the guilt of the corporate officers can be imputed to the corporation should be decided on an evidentiary record and not disposed of on the pleadings.'" Trustee's Mem. at 14 (quoting *Wight*, 218 F. 3d at 87).

The starting point for the Court's analysis of whether the Trustee has standing to bring these claims is whether the adverse interest exception to the Wagoner rule applies. A review of the Amended Complaint shows that the Trustee has alleged that the Jacobs acted for their own benefit, and in plain derogation of the interests of Allou.

For example, the Trustee alleges that the Jacobs diverted Allou's corporate assets and opportunities to enrich themselves, their friends, and their relatives, and to enhance their standing in the community. Amended Complaint ¶¶ 115, 132, 136. The Trustee also alleges that even if Allou was able to increase its borrowing based upon false books and records showing inflated accounts receivable and inventory, these actions were "directly adverse to the interests of Allou" because they misstated Allou's financial condition and impaired its ability to make sound business decisions. Amended Complaint ¶¶ 125, 130.

The Amended Complaint states that many of Allou's transactions with the Defendants "lacked any indicia of regularity, such as shipping manifests, bills of lading or warehouse receiving reports," which is consistent with the Jacobs' acting in their own interests, not the interests of Allou. Amended Complaint ¶ 131. The Trustee further alleges that the Jacobs' actions advanced their own interests while depleting Allou's assets and deepening its insolvency. Amended Complaint ¶¶ 126, 135.

And the Trustee alleges that the Jacobs tried to cover up their fraud at the expense of Allou's interests, by creating fictitious invoices, executing documents with fictitious or incorrect

names, setting fire to Allou's warehouse, and attempting to bribe a fire marshal investigating the incident.  Amended Complaint ¶¶ 139, 141.

For these reasons, and based on the entire record, the Court finds that the allegations of the Amended Complaint establish that the adverse interest exception to the Wagoner rule is applicable in this case.

The next step in the Court's analysis of whether the Trustee has standing to bring these claims is whether the sole actor rule applies.  A review of the Amended Complaint shows that the Trustee has alleged that Allou had innocent independent directors and officers with decision-making power, as well as minority shareholders, who were not involved with or aware of the Jacobs' misconduct and could have taken steps to stop it if they had been aware of it.

For example, the Trustee alleges that Allou had three independent directors who served on the Audit Committee, and eight officers in management roles who were innocent and unaware of the Jacobs' fraud.  Amended Complaint ¶¶ 31, 37, 55, 64-65, 70, 71, 76-82, 85-86, 88-89, 92-93, 95.  The Amended Complaint states that these independent directors and officers could have recognized the fraud, in light of their background and experience, access to Allou's internal reports, responsibility for reviewing financial statements, and management roles.  Amended Complaint ¶¶ 39-40, 44-47, 64-97.

The Trustee also alleges that these independent directors could have taken steps to stop the fraud, in light of their ability to prevent Allou from issuing erroneous financial statements and to report illegal acts to the SEC.  Amended Complaint ¶¶ 45-46, 48-53, 56.  He alleges that this is demonstrated by the actions they took, including changing the locks to Allou's premises, after the fraud was discovered.  Amended Complaint ¶¶ 58-63.  The Amended Complaint further

states that these officers could have taken steps to stop the fraud by reporting it internally or publicly and bringing legal action against the Jacobs.  Amended Complaint ¶¶ 64, 77, 97-100.

The Trustee further alleges that Allou's minority public shareholders, with a thirty-nine percent stake in the company, were innocent and unaware of the Jacobs' fraud, and could have taken steps to stop the fraud, including notifying the SEC or exercising their derivative rights as shareholders, had they known of the fraud.  Amended Complaint ¶¶ 110-12.  And the Trustee alleges that Allou's outside corporate counsel could have taken steps to stop the fraud by advising the independent directors to report the fraud to the SEC.  Amended Complaint ¶¶ 101-04.

For these reasons, and based on the entire record, the Court finds that the allegations of the Amended Complaint establish that the sole actor rule does not bar the application of the adverse interest exception to the Wagoner rule.  For these same reasons, the Court finds that the Trustee has standing to bring the First, Second, and Third Claims for Relief.

Whether the Claims Are Barred by the *In Pari Delicto* Doctrine

The Estate of M. Greenfield argues that the doctrine of *in pari delicto* bars the Trustee from asserting the First and Second Claims for Relief, for aiding and abetting breach of fiduciary duty and aiding and abetting fraud.  Estate of M. Greenfield Mem. at 21.  The Estate of M. Greenfield argues that this doctrine is distinct from the Wagoner rule so that "even if the Court finds the Trustee has standing under *Wagoner*, the doctrine of *in pari delicto* would bar the Trustee from asserting the Aiding and Abetting Claims" against it.  Estate of M. Greenfield Reply Mem. at 13.  The Estate of M. Greenfield argues that because *in pari delicto* denies judicial to relief to wrongdoers, the Jacobs' wrongdoing should be imputed to Allou and the

26

Trustee should be barred from asserting these claims on behalf of the estate.  Estate of M. Greenfield Mem. at 21-22.

The Tereza Defendants similarly argue that the doctrine of *in pari delicto* bars the Trustee from asserting the First and Second Claims for Relief for aiding and abetting breach of fiduciary duty and aiding and abetting fraud, and also the Third Claim for Relief for fraud, because Allou's management cooperated in the wrongful conduct giving rise to these claims. Tereza Defendants' Mem. at 28-29.  The Tereza Defendants argue that the Wagoner rule and *in pari delicto* doctrine are "not the same."  Tereza Defendants' Mem. at 28 n.10.  Nevertheless, they argue that "the inquiry under both is similar" so that "for the same reasons that the Trustee lacks standing under the Wagoner Rule, the Trustee's claims are barred by the doctrine of *in pari delicto*."  Tereza Defendants' Reply  Mem. at 26 n.11 (citations omitted).

The Trustee argues that like the Wagoner rule, the doctrine of *in pari delicto* does not bar him from asserting his claims for relief.  Trustee's  Mem. at 10 n.13.  The Trustee argues that the two rules are "effectively identical" and that "[o]ther than the fact that *Wagoner* is characterized as a standing rule, whereas 'in pari delicto' is an equitable defense, no Second Circuit case suggests a distinction between the two rules."  *Id*.  The Trustee notes that both the *in pari delicto* doctrine and the Wagoner rule apply traditional agency principles to attribute the wrongdoing of a corporation's management to the corporation.  *Id*.  He argues that "[f]or the reasons discussed [with respect to the Wagoner rule], the illegal conduct of the Jacobs cannot be imputed to Allou for purposes of Wagoner or the *in pari delicto* rule."  Trustee's Mem. at 10 n.13.

*In pari delicto* is an equitable defense with boundaries that are determined by state law. *Goldin v. Primiavera Familienstiftung, Tag Assocs. (In re Granite Partners, L.P.),* 194 B.R. 318,

328 (Bankr. S.D.N.Y. 1996). It bars a plaintiff from bringing a claim against a defendant where each is equally at fault. *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 163 (2d Cir. 2003). *See Ross v. Bolton*, 904 F.2d 819, 824 (2d Cir. 1990). The doctrine is founded on the twin notions that courts should not intervene in disputes between two wrongdoers, and courts should deter illegal conduct by denying relief to wrongdoers. *In re Granite Partners, L.P.* 194 B.R. at 328. *See Ross*, 904 F.2d at 824 (*in pari delicto* is "predicated on the principle that to grant plaintiff relief would contravene the public good by aiding one to profit from his own wrong.").

*In pari delicto* may be the basis for dismissing a case at the pleading stage where it appears as an affirmative defense from the complaint. *Color Tile*, 322 F.3d at 164. *See Official Comm. of Unsecured Creditors of Verestar Inc. v. American Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 479-80 (Bankr. S.D.N.Y. 2006); *In re Granite Partners, L.P.*, 194 B.R. at 330-31.

The Wagoner rule and the doctrine of *in pari delicto* are distinct. As one court observed, while courts sometimes use the Wagoner rule and the doctrine of *in pari delicto* interchangeably:

> The two are not . . . the same. The *Wagoner* Rule is one of standing. *In pari delicto* is an equitable defense analogous to unclean hands "rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." . . . It is not enough that both parties are at fault, or *in delicto* - they must be equally at fault, or *in pari delicto*. . . . The Wagoner Rule, on the other hand, deprives the trustee of standing without regard to the relative degree of fault by the debtor's management or the third party.

*In re Grumman Olson Indus., Inc.*, 329 B.R. at 423 n.5 (quoting *Pinter v. Dahl*, 486 U.S. 622, 632 (1988)).

New York law recognizes that when a corporation's managers act within the scope of their employment, their actions may generally be imputed to the corporation. *In re Bennett*

*Funding Group, Inc.*, 336 F.3d at 100.  New York law also recognizes an adverse interest exception to this general rule.  *In re Maxwell Newspapers, Inc.*, 164 B.R. at 866.  As one court observed, "[m]isconduct by a corporation's fiduciaries will not be imputed to the corporation, and the doctrine of *in pari delicto* will not apply, where the fiduciaries were acting outside the scope of their employment or engaged in self-dealing and accordingly had an interest 'adverse to the corporation.'" *Verestar,* 343 B.R. at 479.

New York law also recognizes the sole actor rule, which serves as a limit on the adverse interest exception.  As the *Verestar* court found, "th[e] so-called 'adverse interest' exception does not apply where all of the directors were subject to the control of a 'sole actor'". *Verestar,* 343 B.R. at 479.  *See Wechsler*, 212 B.R. at 36.

Here, as described above, a review of the Amended Complaint shows that the Trustee alleges that the Jacobs acted for their own benefit, and not within the scope of their employment or for the interest of Allou.  *See* pp. 22-23, *supra*.  A review of the Amended Complaint also shows that the Trustee alleges that Allou's directors were not all subject to the control of a sole actor, and that Allou's independent directors, officers, and minority shareholders could have taken steps to stop the fraud in various ways, if they had been made aware of it.  *See* pp. 23-24, *supra*.

For these reasons, and based on the entire record, the Court finds that the First, Second, and Third Claims for Relief are not barred by the doctrine of *in pari delicto*.

Whether the Claims Are Time-Barred

Section 546(a) of the Bankruptcy Code provides that the statute of limitations for "[a]n action or proceeding under section 544, 545, 547, 548, or 553" is the later of "2 years after the

29

entry of the order for relief; or . . . 1 year after the appointment or election of the first trustee." 11 U.S.C. § 546(a). This Court entered orders for relief in certain of the Debtors' Chapter 11 cases on April 10, 2003. Case No. 03-82321, Docket Nos. 3, 4. Pursuant to The Trustee filed the Original Complaint on March 4, 2005, before the expiration of this two-year limitations period. Adv. Docket No. 1.

In the Original Complaint, the Trustee sought to avoid and recover from the Corporate Defendants a series of alleged fraudulent transfers among Allou and the Corporate Defendants (the "Avoidance Claims"). *Id.* The Trustee also asserted claims against the Corporate Defendants for unjust enrichment. *Id.*

In the Amended Complaint, filed on November 23, 2005, the Trustee again seeks to avoid and recover the transfers that were the subject of the Avoidance Claims.[8] Adv. Docket No. 14. The Amended Complaint was served on the Defendants on December 9, 2005. Adv. Docket No. 16 (Affidavit of Service of Amended Summons and Amended Complaint). The Amended Complaint names as additional defendants I. Greenfield, H. Greenfield, and the Estate of M. Greenfield, and asserts as additional claims aiding and abetting breach of fiduciary duty, aiding and abetting fraud, and common law fraud. Adv. Docket No. 14.

The Defendants raise several challenges to the timeliness of the Trustee's Claims for Relief. The Estate of M. Greenfield argues, among other things, that the Avoidance Claims are barred by Section 546's two-year statute of limitations. Estate of M. Greenfield Mem. at 4-5; Estate of M. Greenfield Reply Mem. at 2-3. It argues that these claims were first asserted some

---

[8] The Avoidance Claims are the Fourth through Seventh, Ninth, Tenth, Sixteenth through Nineteenth, and Twenty-First through Twenty-Seventh Claims for Relief.

seven months after the limitations period expired, that they do not relate back to the Original

Complaint, and that the doctrine of equitable tolling does not apply.  Estate of M. Greenfield

Mem. at 9-14.

The Estate of M. Greenfield also argues that because the Trustee's claims for aiding and

abetting breach of fiduciary duty and fraud and for unjust enrichment are based on the same facts

and circumstances as the Avoidance Claims, those claims are time-barred as well.  Estate of M.

Greenfield Mem. at 6; Estate of M. Greenfield Reply Mem. at 5.

Alternatively, the Estate of M. Greenfield argues that the Trustee's claim for aiding and

abetting breach of fiduciary duty should be dismissed because it is time-barred under Delaware's

three-year statute of limitations.  Estate of M. Greenfield Supp. Mem. at 2-5.

The Tereza Defendants and H. Greenfield argue that, to the extent that the Trustee's

claims are based on events occurring before November 30, 1999, they are barred by New York's

six-year statute of limitations set forth in C.P.L.R. § 213.[9]  Tereza Defendants' Mem. at 54-56,

Tereza Defendants' Reply Mem. at 43-44; H. Greenfield Mem. at 2; H. Greenfield Reply Mem.

at 2.  The Tereza Defendants also argue that the Trustee's claim for aiding and abetting breach of

fiduciary duty is barred by Delaware's three-year statute of limitations.  Tereza Defendants'

Supp. Mem. at 2-4.

<u>Whether Delaware's Three-Year Statute of Limitations Applies to the Aiding and Abetting
Breach of Fiduciary Duty Claim</u>

---

[9]  C.P.L.R. § 213(8) provides that "an action based upon fraud" must be commenced
within "the greater of six years from the date the cause of action accrued or two years from the
time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could
with reasonable diligence have discovered it."  N.Y. C.P.L.R. § 213(8).

The Tereza Defendants and the Estate of M. Greenfield argue that the Trustee's First Claim for Relief for aiding and abetting breach of fiduciary duty is time-barred under Delaware's three-year statute of limitations. Tereza Defendants' Supp. Mem. at 2-4; Estate of M. Greenfield Supp. Mem. at 2-5. Relying upon *Official Comm. of Unsecured Creditors of Norstan Apparel Shops, Inc. v. Norman Lattman (In re Norstan Apparel Shops, Inc.)*, 367 B.R. 68 (Bankr. E.D.N.Y. 2007), they argue that claims relating to an alleged breach of fiduciary duty are governed by the statute of limitations of the debtor's state of incorporation, which in this case is Delaware.[10] Tereza Defendants' Supp. Mem. at 2-4; Estate of M. Greenfield Supp. Mem. at 2-5.

The Trustee argues that New York law, including its six-year statute of limitations, not Delaware law, governs these claims. Trustee's Supp. Mem. at 1-7.

Courts have reached different results as to whether the law of the state of incorporation or the state with the greatest interests applies to claims for aiding and abetting a breach of fiduciary duty. As one court recently observed, "[c]ourts are divided over whether the claim for aiding and abetting a breach of fiduciary duty is governed by the law of the state of incorporation, or the choice of law rules applicable to ordinary tort claims." *O'Connell v. Arthur Andersen LLP (In re Alphastar Ins. Group, Ltd.)*, 2008 WL 435494, at *29 (Bankr. S.D.N.Y. 2008).

Several courts have relied upon the internal affairs doctrine to conclude that the law of the state of incorporation should define the applicable limitations period. As the Supreme Court stated:

The internal affairs doctrine is a conflict of laws principle which recognizes that

---

[10]  The Trustee alleges that AHI, the direct or indirect parent of each of the Debtors, is incorporated in Delaware. Amended Complaint ¶ 6.

> only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands.

*Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). *See Adelphia Commc'n Corp. v. Bank of America, N.A. (In re Adelphia Commc'n Corp.)* 365 B.R. 24, 40 n.38 (citing cases).

Other courts have applied the law of the state with the greatest interest in the claim. These courts look to "the fact that the aiding and abetting issues do not involve determination of internal corporate governance matters themselves, as a primary violation of a fiduciary duty obligation has been taken as a given." *In re Adelphia Commc'n Corp.*, 365 B.R. at 40 (citing cases).

And indeed, the statute of limitations applicable to a breach of fiduciary duty claim may not be the same as that which applies to an aiding and abetting claim. For example, in *Solow v. Stone*, 994 F. Supp. 173, 177 (S.D.N.Y. 1998), *aff'd*, 163 F.3d 151 (2d Cir. 1998), the court applied the law of the state of incorporation to a breach of fiduciary duty claim but undertook an interests analysis to determine the law applicable to a claim for aiding and abetting a breach of fiduciary duty. The court stated:

> The same choice-of-law analysis would not seem to apply to plaintiff's remaining claims for aiding and abetting breach of fiduciary duty and tortious interference with contract. These two claims are not directed against the administrators in their capacity as officers or directors [of the corporation], but rather as independent actors. Although this theory is at odds with the facts as described in the complaint, these two claims raise garden-variety tort issues. In tort cases, New York courts apply the law of the jurisdiction with the greatest interest in the dispute. In this case, it appears that the acts giving rise to the aiding and abetting and tortious interference claims took place, in significant part, in New York. . . . In any case, it appears that there is no jurisdiction with an interest greater than New York's with respect to these tort claims.

33

*Solow*, 994 F. Supp. at 177.  *See also Cromer Fin. Ltd. v. Berger*, 2003 WL 21436164, at *9 (S.D.N.Y. 2003) (citations omitted).

Here, several factors point to the application of New York's, rather than Delaware's, statute of limitations to the Trustee's aiding and abetting breach of fiduciary duty claim.  First, this claim is asserted against Defendants who are not officers or directors of Allou, and the claim does not involve "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders."  *Edgar,* 457 U.S. at 645.  Second, the acts giving rise to the claim are alleged to have taken place "in whole or in large part, in New York."  Trustee's Supp. Mem. at 3; Amended Complaint ¶¶ 117-249.  Third, the alleged fraudulent transfers were made by Allou from its headquarters in New York to or for the benefit of the Corporate Defendants which are alleged to be New York corporations.  Amended Complaint ¶¶ 6, 16-20.  And I. Greenfield and H. Greenfield are alleged to have business addresses in New York.  Amended Complaint ¶¶ 17-18.

The application of New York's statute of limitations is also consistent with *In re Norstan Apparel Shops, Inc*., relied on by the Tereza Defendants and the Estate of M. Greenfield.  There, the court found that the statute of limitations of the state of incorporation applied to a breach of fiduciary duty claim.  In reaching this conclusion, Chief Judge Craig noted the distinction in applying the internal affairs doctrine to an aiding and abetting claim, stating:

> [T]he internal affairs doctrine does not always control when the claims asserted belong to 'third parties external to the corporation.' . . .  In that instance, New York law dictates that the court conduct an 'interest analysis' and apply the law of the state which has the greatest interest in the claim.

*In re Norstan Apparel Shops, Inc*., 367 B.R. at 81 (citation omitted).

For these reasons, and based upon the entire record, the Court finds that New York has the greatest interest in the Trustee's aiding and abetting claims and that New York's C.P.L.R. § 213 statute of limitations applies to the First and Second Claims for Relief.

<u>Whether the Avoidance Claims Relate Back to the Date of the Original Complaint</u>

As noted above, the Estate of M. Greenfield argues that the Avoidance Claims in the Amended Complaint do not relate back to the Original Complaint and are, therefore, barred by the statute of limitations. Estate of M. Greenfield Mem. at 4-5; Estate of M. Greenfield Reply Mem. at 2-5. The Estate of M. Greenfield also argues that inasmuch as the aiding and abetting claims "are based upon the same operative facts and circumstances" as the Avoidance Claims, they do not relate back to the Original Complaint and are, therefore, barred by the statute of limitations. Estate of M. Greenfield Reply Mem. at 5. '

The amendment of a pleading is governed by Rule 15(c), which provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." FED. R. CIV. P. 15(c)(2). The Second Circuit has articulated the standard for satisfying Rule 15(c) as follows:

> The purpose of "Rule 15 'is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.'" "For a newly added action to relate back, 'the basic claim must have arisen out of the conduct set forth in the original pleading. . . .'" Under Rule 15, "the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs.
>
> . . .

> In contrast, even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an "entirely distinct set" of factual allegations will not relate back.

*Slayton v. American Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (citations omitted).

And where fraud is alleged, the Second Circuit has found that a new claim will relate back if there is "sufficient commonality" between the new claim and the matters alleged in the original pleading to avoid "unfair surprise" to the defendant. *Benfield v. Mocatta Metals*, 26 F.3d 19, 23 (2d Cir. 1994).

Rule 15(c) does not set a high bar for relation back, so long as the claims attempted to be asserted in the new complaint share a reasonable measure of common ground with the allegations of the original pleading. Rule 15(c) requires only that they arise out of the same "conduct, transaction, or occurrence . . . attempted to be set forth" in the original complaint, but those original allegations do not need to have been sufficient, on their own, to state a claim. FED. R. CIV P. 15(c)(2). As courts have found, "adequate notice" not of the particulars but of the "general fact situation" is all that is required. *Contemporary Mission, Inc. v. N.Y. Times Co.*, 665 F. Supp. 248, 255-56 (S.D.N.Y. 1987). But if there is no common ground between the allegations of the original complaint and those of the amended pleading, then "unfair surprise" would be the result, the repose offered by statutes of limitation would be an empty promise, and relation back must be denied. *Benfield*, 26 F.3d at 23.

A review of the Original Complaint and the Amended Complaint shows that the Trustee alleges substantially the same Avoidance Claims relating to the same transactions and occurrences against the Corporate Defendants that were pleaded in the Original Complaint. *See* Original Complaint ¶¶ 29, 36, 42; Amended Complaint ¶¶ 237, 241, 247.

36

In the Original Complaint, the Trustee alleges that "[a]s part of the fraud, the Jacobs used Allou money to transfer millions of dollars to third party entities for loans or otherwise" and that "[t]hose transfers improperly depleted and wasted Allou's available assets."  Original Complaint ¶¶ 25-26.  The Original Complaint states that "Allou received no consideration for the transfers, let alone fair consideration, and the transfers were not designed to, and did not serve any legitimate corporate purpose."  Original Complaint ¶ 28.  In the Original Complaint, the Trustee also sets forth the same factual background with respect to the fraudulent transfers he seeks to avoid and recover, that is, the transfers are described by check or wire transfer number, date, and amount.  Original Complaint, Exhs. A-E.

The Amended Complaint states that each of the Individual Defendants is an officer and controlling person of the Corporate Defendants.  Amended Complaint ¶¶ 17-19.  It is reasonable to infer that as officers of the Corporate Defendants, the Individual Defendants had notice of the Original Complaint.  *See* Trustee's Supp. Mem. at 9 n.8.  And the claims asserted in the Amended Complaint are not based on an "entirely distinct set" of factual allegations.  Taken as a whole, the allegations in the Original Complaint are sufficient to provide the Individual Defendants with notice of the "general fact situation" that gives rise to the Avoidance Claims asserted in the Amended Complaint.

For these reasons, and based upon the entire record, the Court finds that the Avoidance Claims asserted in the Amended Complaint relate back to the Original Complaint.

Whether the Claims Are Time-Barred to the Extent They Are Based on Transfers Occurring
Before the Six-Year Limitations Period

The Trustee argues that with respect to transfers that occurred outside the two-year

37

limitations period of C.P.L.R. § 213, the alternative two-year discovery period applies. The

Trustee also argues that if the C.P.L.R. § 213(b) two year discovery period is not applicable, the

doctrine of equitable tolling precludes the dismissal of his claims. Trustee's Mem. at 28-30;

Trustee's Supp. Mem. at 8-14.

Statutes of limitations may be equitably tolled if tolling is necessary to prevent unfairness

to a diligent plaintiff. *Haekal v. Refco, Inc*., 198 F.3d 37, 43 (2d Cir. 1999) (citing *Irwin v. Dep't*

*of Veterans Affairs*, 498 U.S. 89, 95-96 (1990)). As noted by one court:

> It is hornbook law that limitations periods are customarily subject to equitable
> tolling . . . Congress must be presumed to draft limitations periods in light of this
> background principle. That is doubly true when it is enacting limitations periods
> to be applied by bankruptcy courts, which are courts of equity and apply the
> principles and rules of equity jurisprudence.

*Official Comm. of Unsecured Creditors v. Pardee (In re Starwich Financial Svcs. Corp.)*, 291

B.R. 25, 28 (Bankr. D. Conn. 2003) (citing *Young v. United States*, 535 U.S. 43 (2002)).

The application of equitable tolling turns on questions of fact that are often difficult to

resolve on a motion to dismiss. As one court observed, "[g]enerally, the applicability of

equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a

Rule 12(b)(6) motion to dismiss (where the review is limited to the complaint) if equitable

tolling is at issue." *Hoffkins v. Orleans BOCES*, 2007 WL 1288210, at *2 (W.D.N.Y. 2007).

*See also Barr v. Charterhouse Group Int'l, Inc. (In re Everfresh Beverages, Inc.)*, 238 B.R. 558,

577 (Bankr. S.D.N.Y. 1999).

The Trustee argues that equitable tolling applies based upon the Defendants' fraudulent

concealment. Trustee's Mem. at 28-30. The Trustee also argues that he could not have

discovered the facts relating to the alleged fraud and the aiding and abetting claims because of

38

the Jacobs' criminal prosecutions and their refusal to provide assistance to the Trustee, and I.

Greenfield's assertion of his Fifth Amendment right against compelled self-incrimination during

a Bankruptcy Rule 2004 examination.  Trustee's Supp. Mem. at 11-12.

As noted by the Second Circuit, "'the law is clear that fraudulent concealment of the

existence of a cause of action tolls the running of the statute of limitations.'"  *Stone v. Williams*,

970 F.2d 1043, 1048 (2d Cir. 1992) (quoting *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir.

1982)).  To rely on the doctrine of fraudulent concealment, a plaintiff must demonstrate "(1)

wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the

nature of the claim within the limitations period, and (3) due diligence in pursuing discovery."

*Antonios A. Alvizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178,

183 (S.D.N.Y. 2000).

A review of the Amended Complaint shows that the Trustee has alleged sufficient

grounds to assert that equitable tolling may apply to his claims.  The Trustee alleges that the

Defendants participated in a "long-running and massive fraudulent scheme" engineered by the

Jacobs to defraud Allou's lenders and creditors by the use of fictitious sales and inventory

purchases and transfers of millions of dollars through, among others, the Corporate Defendants.

Amended Complaint ¶¶ 127-32.  The Trustee alleges that these transactions were concealed by

the use of secret sets of books and records.  Amended Complaint ¶¶ 131, 175.  The Trustee also

alleges that the Jacobs and M. Greenfield and H. Greenfield participated in the execution of

fictitious mortgages and assignments against the Kent Avenue Condominiums, and that M.

Greenfield and H. Greenfield assisted the Jacobs in diverting funds from Allou to the Kent

Avenue Condominiums.  Amended Complaint ¶¶ 146, 166, 213, 218.  The record does not show

39

that the Trustee has not been diligent in pursuing these claims.

Finally, it is noteworthy that at this early stage in the proceedings, the Motions to

Dismiss test whether the pleadings are adequate, not whether the proof is sufficient to establish

that the Trustee is entitled to relief.  That is, the question to be answered at this stage is only

whether the Amended Complaint states a claim for relief, including grounds, if proven, to

conclude that his claims are not time-barred.

For these reasons, and based on the entire record, the Court finds that the Amended

Complaint adequately alleges facts which, if proven, establish that the Trustee's Claims for

Relief based on transfers that occurred before the six-year limitations period may not be time-

barred.

The Statutory Claims for Relief

Whether the Amended Complaint States Claims Against H.I.L., Tereza, and Morgren for
Avoidance and Recovery of Fraudulent Transfers Made with Intent to Defraud

The Fourth, Sixteenth, and Twenty-Fourth Claims for Relief assert claims against H.I.L.,

Tereza, and Morgren, respectively, to avoid and recover the H.I.L. Transfers,[11] the Tereza

Transfers,[12] and the Morgren Transfer[13] as transfers made with intent to defraud under New

---

[11]  The H.I.L. Transfers are identified in the Amended Complaint as "at least One
Hundred Thirty-One (131) separate transfers totaling no less than $21,238,492.69" made by
Allou directly to H.I.L. between April 9, 1997, and April 9, 2003.  Amended Complaint ¶ 237.

[12]  The Tereza Transfers are identified in the Amended Complaint as "at least Twenty-
Nine (29) transfers totaling no less than $11,250,753.73" made by Allou directly to Tereza
between April 9, 1997, and April 9, 2003.  Amended Complaint ¶ 241.

[13]  The Morgren Transfer is identified in the Amended Complaint as "at least One (1)
transfer totaling no less than $600,000" made by Allou directly to Morgren between April 9,
1997, and April 9, 2003.  Amended Complaint ¶ 247.

40

York's Debtor and Creditor Law ("DCL") Section 276.  Amended Complaint ¶¶ 267-68, 304-05, 335-36.  The Tenth and Twenty-Second Claims for Relief assert claims against H.I.L. and Tereza, respectively, to avoid and recover the H.I.L. One Year Transfers[14] and the Tereza One Year Transfers[15] as transfers made with intent to defraud under Bankruptcy Code Section 548(a)(1)(A).

### New York Debtor and Creditor Law Section 276

Section 544(b) of the Bankruptcy Code authorizes the Trustee to avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ."  11 U.S.C. § 544(b)(1).  Under this authority, the Trustee seeks to avoid the H.I.L. Transfers, the Tereza Transfers, and the Morgren Transfer under DCL Section 276.  That section provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."  N.Y. DEBT. & CRED. LAW § 276.

### Bankruptcy Code Section 548(a)(1)(A)

Section 548(a)(1)(A) also applies to transfers made with intent to deceive but, unlike DCL Section 276, Section 548(a)(1)(A) applies only to transfers made within one year of the

---

[14]  The H.I.L. One Year Transfers are identified in the Amended Complaint as "at least Twenty (20) of the H.I.L. Transfers totaling $943,348.64" made within one year of the Petition Date.  Amended Complaint ¶ 238.

[15]  The Tereza One Year Transfers are identified in the Amended Complaint as "at least Eighteen (18) of the Tereza Transfers totaling $4,513,224.45" that were made within one year of the Petition Date.  Amended Complaint ¶ 242.

Petition Date.[16]  Section 548(a)(1)(A) provides:

(a)(1)  The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within [one] year[] before the date of the filing of the petition, if the debtor voluntarily or involuntarily

(A)  made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; . . . .

11 U.S.C. § 548(a)(1)(A).

The Tereza Defendants argue that the Trustee's actual fraudulent transfer claims do not satisfy the pleading requirements of Rule 9(b) because they "contain no facts whatsoever concerning any particular Defendant's motive, knowledge, opportunity, intent or any other state of mind."  Tereza Defendants' Mem. at 46-47.

The Trustee argues that the fraud allegations in the Amended Complaint are pled with specificity and "are detailed and explicit and are supported by reference to specific events, actions, persons, documents and dates."  Trustee's Mem. at 35.

The Trustee's factual allegations supporting claims for intentional fraudulent transfers are subject to the heightened pleading requirements of Rule 9(b).  *See Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240, 251 (2d Cir. 1987).  At the same time, this scrutiny should take place "while taking into account that the Trustee is entitled to some leeway in the areas of scienter and particularity because he has no personal knowledge of the facts."  *In re Monahan*

---

[16]  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amends Section 548 to extend the reachback period to two years, but this amendment was effective as of one year after the enactment date of BAPCPA, and is not applicable here.

*Ford Corp. of Flushing*, 340 B.R. at 37-38 (citations omitted).

A plaintiff may allege actual intent "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Westdeutsche Landesbank Girozentrale v. SNC-Lavalin Constructors, Inc. (In re Enron Corp.),* 2006 WL 2400083, at *8 (Bankr. S.D.N.Y. 2006) (citing *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001)). Courts look to certain "badges of fraud" as circumstantial evidence of actual intent. *See Sharp Int'l Corp. v. State St. Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005); *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir. 1983). These include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question [by the debtor]; (4) the financial condition of the [transferor] both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transaction under inquiry.

*In re Kaiser*, 722 F.2d at 1582-83.

Accordingly, in order to state a claim, the Amended Complaint must allege with particularity facts that give rise to an inference that the H.I.L. Transfers, the Tereza Transfers, the Morgren Transfer, the H.I.L. One Year Transfers, and the Tereza One Year Transfers were made with the actual intent to hinder, delay, or defraud Allou's creditors.

The Trustee alleges:

> The Corporate Defendants . . . actively assisted the Jacobs in defrauding Allou and its creditors by engaging in numerous 'round trip' transactions with Allou and entities controlled by the Jacobs. The express purpose and the end result of these transactions was to allow the Jacobs to create bogus sales and inventory purchases entered on the books of Allou.

43

Amended Complaint ¶ 147.

In support of this allegation, the Amended Complaint identifies many "round-trip" transactions among Allou and Tereza, Buy & Save Trading Corp., Impax Trading Corporation a/k/a Impax Trading Inc., and Capital Sales Corp. Amended Complaint ¶ 151. The Trustee alleges that these transactions created fraudulent inventory and sales on Allou's books and records. *Id*. They are described by the parties involved, the date, the check or wire transfer number, and the amount. *Id*. The Trustee alleges that the "end result of the transactions with Defendants was that approximately $20,306,990 in fictitious sales and $22,603,587 in fictitious inventory purchases were recorded on Allou's books and records." Amended Complaint ¶ 149. The Trustee alleges that the Corporate Defendants participated in the "round-trip" transactions with the Controlled Entities "with the understanding they were laundered and/or would be laundered at the Jacobs Family direction." Amended Complaint ¶ 262.

The Trustee also alleges that "[t]he Corporate Defendants . . . directly participated in the Jacobs scheme to defraud and loot Allou by receiving millions of dollars directly in connection with fictitious and fraudulent purchases of goods and by aiding and abetting the Jacobs in the scheme to divert millions of dollars in additional funds from Allou . . . ." Amended Complaint ¶ 146. The Amended Complaint describes these transfers by the date, the check or wire transfer number, and the amount. Amended Complaint ¶¶ 240, 244, 249. The Amended Complaint states that "[d]uring the time that the Corporate Defendants were being paid over $32 million by Allou for fraudulent inventory transactions, approximately January 1997 through March 2003, the Corporate Defendants were paying Olbex, [a Jacobs-controlled entity,] more than $90 million." Amended Complaint ¶ 219. *See* Amended Complaint ¶¶ 220-21.

The Trustee alleges:

[The] vast majority of the transactions with the Corporate Defendants lacked any indicia of regularity, such as shipping manifests, bills of lading or warehouse receiving reports. Inventory records of purchases from the Corporate Defendants were determined to be fictitious and part of a second, secret set of books maintained by the Jacobs.

Amended Complaint ¶ 131.

Here, the Trustee has alleged a series of circumstances that, taken together, "'give rise to a strong inference of fraudulent intent.'" *In re Enron Corp.,* 2006 WL 2400083, at *8 (quoting *Kalnit*, 264 F.3d at 138). These include allegations of "round-trip" transactions which support the inference that the Corporate Defendants participated in the Jacobs' scheme fraudulently to misrepresent Allou's financial condition, and allegations of specific transactions between Allou, H.I.L., Tereza, and Morgren in which the Corporate Defendants received Allou's funds without providing anything in return. Amended Complaint ¶¶ 240, 244, 249. These also include allegations that these transactions were recorded on a secret set of Allou's books and records. Amended Complaint ¶ 131. And these include allegations that Allou did not receive any consideration for the H.I.L. Transfers, the Tereza Transfers, the Morgren Transfer, the H.I.L. One Year Transfers, and the Tereza One Year Transfers because no product was shipped or received. Amended Complaint ¶¶ 239, 243, 248.

For these reasons, and based on the entire record, the Court finds that the Amended Complaint states claims for avoidance and recovery of fraudulent transfers made with the intent to deceive. Accordingly, the Tereza Defendants' Motion to Dismiss the Trustee's Fourth, Tenth, Sixteenth, Twenty-Second, and Twenty-Fourth Claims for Relief is denied.

Whether the Amended Complaint States Claims Against H.I.L., Tereza, and Morgren for

45

Avoidance and Recovery of Constructive Fraudulent Transfers

The Fifth through Seventh, Seventeenth through Nineteenth, and Twenty-Fifth through

Twenty-Seventh Claims for Relief assert claims against H.I.L., Tereza, and Morgren for

avoidance and recovery of the H.I.L.Transfers,[17] the Tereza Transfers,[18] and the Morgren

Transfer[19] based upon constructive fraud under Sections 273 to 275 of New York's Debtor and

Creditor Law.  The Ninth and Twenty-First Claims for Relief asserts claims against H.I.L. and

Tereza for avoidance and recovery of the H.I.L One Year Transfers[20] and the Teresa One Year

Transfers[21] based upon constructive fraud under Section 548(a)(1)(B) of the Bankruptcy Code.

*New York Debtor and Creditor Law Sections 273, 274, and 275*

New York's Debtor and Creditor Law provides that a conveyance by a debtor is deemed

constructively fraudulent if it is made without "fair consideration" and any of the following

conditions is met:  (1) the transferor is insolvent or will be rendered insolvent by the transfer in

---

[17]  The Fifth, Sixth, and Seventh Claims for Relief assert claims against H.I.L. to avoid and recover the H.I.L. Transfers as constructive fraudulent transfers under DCL Sections 273, 274, and 275, respectively.  Amended Complaint ¶¶ 269-77.

[18]  The Seventeenth, Eighteenth, and Nineteenth Claims for Relief assert claims against Tereza to avoid and recover the Tereza Transfers as constructive fraudulent transfers under DCL Sections 273, 274, and 275, respectively.  Amended Complaint ¶¶ 306-14.

[19]  The Twenty-Fifth, Twenty-Sixth, and Twenty-Seventh Claims for Relief assert claims against Morgren to avoid and recover the Morgren Transfer as a constructive fraudulent transfer under DCL Sections 273, 274, and 275, respectively.  Amended Complaint ¶¶ 337-45.

[20]  The Ninth Claim for Relief asserts claims against H.I.L. to avoid and recover the H.I.L. One Year Transfers as constructive fraudulent transfers under Section 548(a)(1)(B) of the Bankruptcy Code.  Amended Complaint ¶¶ 281-86.

[21]  The Twenty-First Claim for Relief asserts claims against Tereza to avoid and recover the Tereza One Year Transfers as constructively fraudulent transfers under Section 548(a)(1)(B) of the Bankruptcy Code.  Amended Complaint ¶¶ 318-23.

question (DCL Section 273),[22] (2) the transferor is engaged or is about to engage in a business or

transaction for which its remaining property constitutes unreasonably small capital (DCL Section

274),[23] or (3) the transferor believes that it will incur debt beyond its ability to pay (DCL

Section 275).[24]  *See In re Sharp Int'l Corp.*, 403 F.3d at 53.

*Bankruptcy Code Section 548(a)(1)(B)*

    Section 548(a)(1)(B) provides:

    (a)(1)    The Trustee may avoid any transfer . . . of an interest of the debtor in
            property, . . . incurred by the debtor that was made or incurred on or

---

    [22] Section 273 of the Debtor and Creditor Law provides:

    Every conveyance made and every obligation incurred by a person who is or will
    be thereby rendered insolvent is fraudulent as to creditors without regard to his
    actual intent if the conveyance is made or the obligation is incurred without a fair
    consideration.

N.Y. Debt. & Cred. Law § 273.

    [23] Section 274 of the Debtor and Creditor Law provides:

    Every conveyance made without fair consideration when the person making it is
    engaged or is about to engage in a business or transaction for which the property
    remaining in his hands after the conveyance is an unreasonably small capital, is
    fraudulent as to creditors and as to other persons who become creditors during the
    continuance of such business or transaction without regard to his actual intent.

N.Y. Debt. & Cred. Law § 274.

    [24] Section 275 of the Debtor and Creditor Law provides:

    Every conveyance made and every obligation incurred without fair consideration
    when the person making the conveyance or entering into the obligation intends or
    believes that he will incur debts beyond his ability to pay as they mature, is
    fraudulent as to both present and future creditors.

N.Y. Debt. & Cred. Law § 275.

within [one] year[] before the date of the filing of the petition, if the debtor voluntarily or involuntarily–

(B)(i)    received less than a reasonably equivalent value in exchange for such transfer or obligation; and

    (ii) (I)    was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

    (II)    was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

    (III)    intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; . . . .

11 U.S.C. § 548(a)(1)(B).

The Tereza Defendants argue that the Trustee's constructive fraud claims must be dismissed for lack of specificity. Tereza Defendants' Mem. at 48-51. They argue that the Amended Complaint alleges only "bald legal conclusions" rather than the necessary facts to support the claims. Tereza Defendants' Mem. at 49-50.

The Trustee argues that the Amended Complaint sets forth specific factual allegations describing the alleged fraudulent transfers at issue, and "clearly and in detail alleges that Allou received no consideration for the payments made to the" Corporate Defendants. Trustee's Mem. at 41 n.42.

A claim for constructive fraudulent transfer is not required to satisfy the heightened pleading standard of Rule 9(b). *Sharp Int'l Corp. v. State St. Bank and Trust Co. (In re Sharp Int'l Corp.)*, 281 B.R. 506, 518 (Bankr. E.D.N.Y. 2002), *aff'd*, 302 B.R. 760 (E.D.N.Y. 2003),

*aff'd,* 403 F.3d 43 (2d Cir. 2005). This is because "scienter is not an element; the claim is based upon the financial condition of the transferor at the time of the transfer and the sufficiency of the consideration provided by the transferee." *Stratton Oakmont*, 234 B.R. at 319.

As a result, in order to state a claim, the Amended Complaint must satisfy Rule 8(a) and "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus,* ____ U.S. ____, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atlantic*, 127 S. Ct. at 1955). The Trustee is not required "to plead the legal theory, facts, or elements underlying his claim." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 415 F. Supp. 2d 261, 270 (S.D.N.Y. 2005) (quotations and citations omitted).

A review of the Amended Complaint shows that it describes the H.I.L. Transfers, the Tereza Transfers, the Morgren Transfer, the H.I.L. One Year Transfers, and the Tereza One Year Transfers (collectively, the "Transfers") by the date, the check or wire transfer number, and the amount. Amended Complaint ¶¶ 240, 244, 249. The Trustee alleges that Allou received no consideration for the Transfers and that they were part of the Jacobs' fraudulent scheme. *See* Amended Complaint ¶¶ 239, 243, 248. The Amended Complaint sets forth specific allegations describing the participation of the Corporate Defendants in the Jacobs' activities. *See, e.g.*, Amended Complaint ¶¶ 131, 146, 147, 149, 151, 261, 262. *See* pp.7-12, *supra*.

The Trustee alleges that at the time of the Transfers, Allou was insolvent or was rendered insolvent by those transfers. *See* Amended Complaint ¶¶ 269, 282, 306, 319, 337. The Trustee also alleges that Allou made the Transfers at a time that it was engaged in business, or was about to be engaged in business, for which it had unreasonably small capital and/or intended to incur or believed that it would incur debts beyond its ability to pay as they matured. *See* Amended

49

Complaint ¶¶ 272, 275, 282, 309, 319, 340, 343.

For these reasons, and based on the entire record, the Court finds that the Amended Complaint states claims for avoidance and recovery of constructive fraudulent transfers. Accordingly, the Tereza Defendants' Motion to Dismiss the Trustee's Fifth through Seventh, Ninth, Seventeenth through Nineteenth, Twenty-First, and Twenty-Fifth through Twenty-Seventh Claims for Relief is denied.

Whether the Amended Complaint States a Claim against Tereza for Avoidance and Recovery of Preferential Transfers

The Twenty-Third Claim for Relief asserts a claim against Tereza for avoidance and recovery of preferential transfers under Bankruptcy Code Section 547(b) (the "Tereza Preferential Transfers"). The Trustee alleges that "[u]pon information and belief, within ninety (90) days before the Filing Date, Allou made at least Three (3) separate transfers totaling no less than $278,448.60 directly to Tereza." Amended Complaint ¶¶ 245, 327. The Amended Complaint identifies, the date, the check or wire transfer number, and the amount of the each alleged preferential transfer. Amended Complaint ¶ 246.

The Trustee also alleges that the Tereza Preferential Transfers constituted a transfer of an interest of Allou's property, that they were made to or for the benefit of Tereza, a creditor while Allou was insolvent, and were for or on account of antecedent debts owed by Allou before they were made. Amended Complaint ¶¶ 328-31. The Amended Complaint also states that the Tereza Preferential Transfers allowed Tereza to receive more than it would have received if it had instead been paid in these substantively consolidated bankruptcy cases to the extent provided by the Bankruptcy Code, or in a Chapter 7 liquidation. Amended Complaint ¶ 332.

The Tereza Defendants argue that this claim should be dismissed because the Trustee does no more than repeat the statutory language of Section 547(b) in the Amended Complaint. The Tereza Defendants rely on *In re Valley Media, Inc.*, for the proposition that "merely quoting statutory language is insufficient to survive a Rule 12(b)(6) motion." Tereza Defendants' Mem. at 53 (citing *In re Valley Media, Inc.*, 288 B.R. 189, 192 (Bankr. D. Del. 2003)).

Section 547(b) enables a trustee to avoid a transfer of an interest of the debtor in property to or for the benefit of a creditor, for or on account of an antecedent debt owed by the debtor before the transfer was made, that was made while the debtor was insolvent and on or within ninety days before the date of the filing of the petition, that enables such creditor to receive more than such creditor would receive if the case were a case under Chapter 7 and the transfer had not been made and such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 547(b).

In *Birdsell v. U.S. West Newvector Group, Inc.,* the court noted that while "mere recitation of the statutory elements of preference" does not necessarily satisfy Rule 8, "[i]t may not be necessary for an initial complaint to identify each transfer by check number, date and amount." *Birdsell v. U.S. West Newvector Group, Inc (In re Cellular Express of Ariz., Inc.)*, 275 B.R. 357, 363 (Bankr. D. Ariz. 2002).

A review of the Amended Complaint shows that the Trustee has satisfied the requirements to state this claim. He has identified each transfer by check number, date, and amount. Amended Complaint ¶ 246. And it is not an impediment to the Trustee's claim that some of the allegations are stated upon information and belief. *See In re White Metal Rolling & Stamping Corp.*, 222 B.R. at 428.

For these reasons, and based on the entire record, the Court finds that the Amended

Complaint states claims for avoidance and recovery of the Tereza Preferential Transfers.

Accordingly, the Tereza Defendants' Motion to Dismiss the Trustee's Twenty-Third Claim for

Relief is denied.

The Common Law Claims for Relief

Whether the Amended Complaint States Claims Against the Defendants for Aiding and Abetting
Fraud

The Second Claim for Relief asserts a claim against the Defendants for aiding and

abetting fraud.  The Trustee alleges:

> The Jacobs Family perpetuated a scheme to defraud Allou and all creditors of
> Allou through manipulation of Allou's reported accounts receivable and
> inventory and through money laundering.
>
> The Defendants' actions in respect of the Kent Rush Condominiums project and
> the transactions with Controlled Entities were patently irregular and were not the
> type of transactions that would be undertaken as part of the regular and legitimate
> commercial activities.
>
> By agreeing to participate in the Kent Rush Condominium scheme and bogus
> transactions with the Controlled Entities, the Defendants knew or should have
> known that the Jacobs Family were engaged in a fraud designed to cause injury to
> Allou and all creditors of Allou.
>
> The Defendants substantially assisted the Jacobs Family in the commission of the
> fraud by agreeing to participate in the Kent Rush Condominium scheme and the
> bogus transactions with the Controlled Entities.
>
> Allou and all creditors of Allou were injured by the massive fraud aided, abetted
> and participated in by the Defendants.

Amended Complaint ¶¶ 255-59.

The Defendants seeks dismissal of this claim on various grounds, including that the

Trustee does not plead fraud with the particularity required by Rule 9(b).  Tereza Defendants'

52

Mem. at 30-38; H. Greenfield Mem. at 2.[25]

The Trustee argues that as a trustee in bankruptcy, the standard for pleading fraud is relaxed. He notes that a relaxed standard is appropriate here for the additional reason that I. Greenfield asserted his Fifth Amendment privilege at the Bankruptcy Rule 2004 examination of H.I.L. and Tereza. Trustee's Mem. at 32. And the Trustee argues that the Amended Complaint's allegations of fraud satisfy the requirements of Rule 9(b). Trustee's Mem. at 32-38.

The elements of a claim for aiding and abetting fraud under New York law are "(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006). Such claims are subject to the particularity requirements of Rule 9(b). *See Wight,* 219 F.3d at 91; *In re Monahan Ford Corp. of Flushing*, 340 B.R. at 33.

### The Existence of a Fraud

The first element of a claim for aiding and abetting a fraud is the existence of a fraud. As described above, the Trustee alleges that the Defendants participated in a "long-running and massive fraudulent scheme" engineered by the Jacobs to defraud Allou's lenders and creditors by the use of fictitious sales and inventory purchases, transfers of millions of dollars through,

---

[25] H. Greenfield and the Estate of M. Greenfield also argue that the this claim should be dismissed because the Trustee lacks standing and because it is barred by the applicable statute of limitations. Estate of M. Greenfield Mem. at 3; H. Greenfield Mem. at 2. As discussed above, the Court has determined that the Trustee has standing and that these claims are not time-barred. *See* pp. 16-30, *supra*.

among others, the Corporate Defendants, and the Kent Avenue Condominium scheme.[26]

Amended Complaint ¶¶ 113-236.  The Amended Complaint states that the Jacobs "were indicted

in connection with their scheme to defraud Allou, which criminal authorities allege to have

begun in the mid-1990s and to have increased in magnitude and scope until March 2003 when

the fraud was finally exposed."  Amended Complaint ¶ 29.  These allegations describe with the

required particularity the existence of a fraud.

### *The Defendants' Knowledge of the Fraud*

The second element of a claim for aiding and abetting a fraud is actual knowledge of the

fraud.  *See In re Monahan Ford Corp. of Flushing*., 340 B.R. at 33.  "Actual knowledge may be

implied from a stong inference of fraudulent intent."  *Mazzaro de Abreu v. Bank of America*

*Corp.*, 525 F. Supp. 2d 381, 388 (S.D.N.Y. 2007)).  That is, the Trustee must allege facts that

show or support an inference that each Defendant had actual knowledge of the fraud.

"Allegations that a defendant should have known of  fraud are insufficient."  *VTech Holdings*

*Ltd. v. Pricewaterhouse Coopers, LLP*., 348 F. Supp. 2d 255, 269 (S.D.N.Y. 2004).

As to the Corporate Defendants, as described above, the Trustee has alleged facts

sufficient to support the inference that the Corporate Defendants participated in the Jacobs'

scheme fraudulently to misrepresent Allou's financial condition, and to show specific

transactions between Allou, H.I.L., Tereza, and Morgren in which the Corporate Defendants

---

[26]  The Amended Complaint states that on June 17, 2004, the Jacobs "were indicted in connection with their scheme to defraud Allou, which criminal authorities allege to have begun in the mid-1990s and to have increased in magnitude and scope until March 2003 when the fraud was finally exposed."  Amended Complaint ¶ 29.

received Allou's funds without providing anything in return. Amended Complaint ¶¶ 240, 244, 249. The Trustee has also alleged that these transactions were recorded on a secret set of Allou's books and records, and that Allou did not receive any consideration for numerous transactions that involved the Corporate Defendants. Amended Complaint ¶¶ 131, 239, 243, 248. *See* pp. 6-8, *supra*.

These allegations describe with sufficient particularity the Corporate Defendants' knowledge of the fraud. *See Mazzaro de Abreu*, 525 F. Supp. 2d at 388.

As to the defendant I. Greenfield, the Amended Complaint states that I. Greenfield is the president or a director, and a controlling person, of each of the Corporate Defendants. Amended Complaint ¶ 17. The Trustee alleges that I. Greenfield participated directly in the Jacobs' fraudulent scheme "by receiving millions of dollars directly in connection with fictitious and fraudulent purchases of goods . . . ." Amended Complaint ¶ 146. The Amended Complaint identifies these transfers by the date, the check or wire transfer number, and the amount. Amended Complaint ¶¶ 240, 244, 249. The Trustee alleges that I. Greenfield "caused the Corporate Defendants to accept the Transfers, with the understanding they were laundered and/or would be laundered at the Jacobs Family direction." Amended Complaint ¶ 261.

The Trustee also alleges that I. Greenfield "actively assisted the Jacobs in defrauding Allou and its creditors by engaging in numerous 'round trip' transactions with Allou and [the Controlled Entities]" for the purpose of allowing "the Jacobs to create bogus sales and inventory purchases entered on the books of Allou." Amended Complaint ¶ 147. As noted above, the Amended Complaint details the alleged "round-trip" transfers between Corporate Defendants and the Controlled Entities. Amended Complaint ¶ 151. The Trustee alleges that I. Greenfield

55

"caused the Corporate Defendants to participate in the round trip transactions with the Controlled Entities with the understanding they were laundered and/or would be laundered at the Jacobs Family direction."  Amended Complaint ¶ 262.

These allegations describe with sufficient particularity the knowledge of I. Greenfield of the fraud.

As to H. Greenfield and the Estate of M. Greenfield, the Trustee alleges that H. Greenfield "is an officer and/or a director of each of the Corporate Defendants and is a controlling person for each of the Corporate Defendants."  Amended Complaint ¶ 18.  The Amended Complaint states that before his death, M. Greenfield was an officer of H.I.L. and Tereza, an authorized signatory on the bank accounts of those entities, and a controlling person of H.I.L. and Tereza.  Amended Complaint ¶ 19.

The Trustee also alleges that H. Greenfield and M. Greenfield participated directly in the Jacobs' fraud by receiving millions of dollars in connection with the alleged fictitious purchases of goods, and by engaging in alleged "round-trip" transactions with Allou and the Controlled Entities.  Amended Complaint ¶¶ 146-47.  The Amended Complaint states that H. Greenfield and M. Greenfield caused the Corporate Defendants to accept transfers of funds and to engage in the "round-trip" transactions with the understanding that the transfers and the "round-trip" transactions were "laundered" or would be "laundered" at the Jacobs' direction.  Amended Complaint ¶¶ 261-62.

In addition, the Trustee alleges that H. Greenfield signed the assignment of the mortgage from 2165 K-R to Tereza, and that the assignment had no legitimate purpose but was part of the Jacobs' scheme to put the Bedford Wall Property beyond the reach of the Trustee.  Amended

56

Complaint ¶ 166.  The Trustee alleges that H. Greenfield "participated in the transactions involving the Spreader Agreement on the Bedford Wall Property as accomplices of the Jacobs Family . . . ."  Amended Complaint ¶ 218.

And the Trustee alleges that M. Greenfield was "a principal and/or owner of both 2165 K-R and K.E.R.U. and signed numerous documents related to the Kent Avenue Condominiums and Kent Avenue Property as an authorized representative . . . ."  Amended Complaint ¶ 161. The Trustee alleges that "M. Greenfield acted as a front for the real interests of the Jacobs' family."  *Id.*

These allegations describe with sufficient particularity the knowledge of H. Greenfield and the Estate of M. Greenfield of the fraud.

### Substantial Assistance

The third element of a claim for aiding and abetting a fraud is substantial assistance to advance the commission of the fraud.  *See Mazzaro de Abreu*, 525 F. Supp. 2d at 390.  As one court has stated:

> A defendant substantially assists the commission of the fraud when it affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed; and when its actions . . . proximately cause[d] the harm on which the primary liability is predicated.

*In re Monahan Ford Corp. of Flushing*, 340 B.R. at 34 (quotations and citations omitted).

For many of the same reasons that the Trustee has alleged that each of the Corporate Defendants and the Individual Defendants had knowledge of the Jacobs' fraud, he has also alleged with sufficient particularity that each of them substantially assisted the commission of the fraud.  *See* Amended Complaint ¶¶ 131, 146-47, 149, 151, 161, 166, 218-19, 239-40, 244,

247-49, 262.

For these reasons, and based on the entire record, the Court finds that the Amended

Complaint states claims for aiding and abetting fraud.  Accordingly, the Defendants' Motion to

Dismiss the Trustee's Second Claim for Relief is denied.

<u>Whether the Amended Complaint States Claims Against the Defendants for Aiding and Abetting
Breach of Fiduciary Duty</u>

The First Claim for Relief asserts a claim against the Defendants for aiding and abetting

breach of fiduciary duty.  The Trustee alleges:

> The Defendants knew of the violations and the conduct of the Jacobs Family with
> respect to Allou and the fraudulent scheme perpetrated by the Jacobs as aided by
> the Defendants.

> The Defendants, acting in concert with the Jacobs Family, rendered substantial
> assistance in the achievement of the waste, mismanagement and breach of
> fiduciary duties by the Jacobs Family by virtue of the Defendants' participation in
> the fraudulent scheme.

> As a result of the foregoing, Allou suffered losses totaling at least $200,000,000,
> leaving them with liabilities substantially in excess of their assets and with a
> multitude of claimants seeking compensatory and other damages all of which
> culminated in the Debtors' financial ruin and ultimate bankruptcy.

Amended Complaint ¶¶ 251-53.

The Defendants seek dismissal of the aiding and abetting breach of fiduciary duty claims

on the same grounds as they seek dismissal of the aiding and abetting fraud claims.  *See* Tereza

Defendants' Mem. at 30-38; H. Greenfield Mem. at 2; Estate of M. Greenfield Mem. at 3.[27]

The elements of a claim for aiding and abetting a breach of fiduciary duty under New

---

[27]  As noted above, the Court has determined that the Trustee has standing and that these
claims are not time-barred.  *See* pp. 16-30, *supra.*

58

York law are "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Lerner*, 459 F.3d at 294. *See In re Sharp Int'l Corp.*, 403 F.3d at 49-50. These claims are subject to the particularity requirements of Rule 9(b). *See Mazzaro de Abreu*, 525 F. Supp. 2d at 393.

The elements of aiding and abetting fraud and aiding and abetting breach of fiduciary duty have some similarities. Each claim requires the defendant to have actual knowledge of the wrongdoing and to have substantially assisted in the wrongdoing. *See Pension Comm. of the Univ. of Montreal Pension Plan v. Bank of America Sec. L.L.C.*, 446 F. Supp. 2d 163, 201 (S.D.N.Y. 2006).

### *The Existence of a Fiduciary Breach*

The first element of this claim is the existence of a breach of fiduciary duty. The Amended Complaint contains numerous allegations that Jacobs were fiduciaries and breached their fiduciary duty to Allou. The Trustee alleges that "Victor, Herman and Jacob . . . held various senior executive positions as officers in AHI" and that "Victor and Herman each also served on Allou's Board of Directors." Amended Complaint ¶¶ 22-23. As noted by the Second Circuit "[u]nder New York law, a director or officer of a corporation owes a fiduciary duty to the corporation." *Gully v. Nat'l Credit Union Admin. Bd.,* 341 F.3d 155, 165 (2d Cir. 2003). The Trustee also alleges that the Jacobs breached their fiduciary duties to Allou by the creation of fictitious sales and inventory purchases, by "laundering" Allou's funds, and by the Kent Rush Condominium scheme. Amended Complaint ¶¶ 113-236. These allegations describe with the required particularity the existence of a breach of fiduciary duty.

59

### *The Defendants' Knowing Inducement or Participation in the Fiduciary Breach*

The second element of this claim is the knowing inducement or participation in the fiduciary breach by the defendant.  As noted by the Second Circuit:

> With respect to the second requirement, "[a]lthough a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty."  And, "[a] person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator."

*Lerner*, 459 F.3d at 294 (quoting *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169-70 (1st Dep't 2003)).

As described above, the Trustee alleges that each of the Defendants had knowledge of the Jacobs' fraud and provided substantial assistance to advance the commission of the fraud.  *See* pp. 55-59, *supra*.  For these same reasons, these allegations describe with the required particularity the Defendants' knowing inducement or participation in the Jacobs' fiduciary breach.  *See* Amended Complaint ¶¶ 131, 146-47, 149, 151, 161, 166, 218-19, 239-40, 242-44, 247-49, 262.

### *The Plaintiff's Damages*

The third element of this claim is that the plaintiff suffered damages as a result of the breach of fiduciary duty.  The Trustee alleges that "the Defendants are liable to the Trustee in the sum of at least $200,000,000 for aiding and abetting the waste and mismanagement of Allou's assets by the Jacobs Family and the breach of their fiduciary duties."  Amended Complaint ¶ 254.

These allegations describe with the required particularity the damages suffered by Allou as a result of the breach of fiduciary duty.

For these reasons, and based on the entire record, the Court finds that the Amended Complaint states claims for aiding and abetting breach of fiduciary duty.  Accordingly, the Defendants' Motion to Dismiss the Trustee's First Claim for Relief is denied.

Whether the Amended Complaint States a Claim Against the Defendants for Common Law Fraud

The Third Claim for Relief asserts common law fraud claims against the Defendants based upon their alleged "participation" in the Jacobs' fraudulent schemes.  The Trustee alleges:

> The Corporate Defendants accepted the Transfers, and M. Greenfield, H. Greenfield and I. Greenfield caused the Corporate Defendants to accept the Transfers, with the understanding they were laundered and/or would be laundered at the Jacobs Family direction.
>
> The Corporate Defendants participated in, and M. Greenfield, H. Greenfield and I. Greenfield caused the Corporate Defendants to participate in, the round trip transactions with the Controlled Entities with the understanding they were laundered and/or would be laundered at the Jacobs Family direction.
>
> The Defendants knew or should have known that their agreement to launder the round trip transactions with the Controlled Entities and to receive laundered Transfers would facilitate the Jacobs Family fraud upon Allou and creditors of Allou causing substantial injury to those parties.
>
> M. Greenfield and H. Greenfield participated in the Kent Rush condominium scam with the understanding that they were facilitating the Jacobs Family's fraud on Allou and its creditors causing substantial injury to those parties.
>
> Allou and all creditors were actually injured as a consequence of the Defendants' conduct.

Amended Complaint ¶¶ 261-65.

The Tereza Defendants and H. Greenfield argue that the all of the Trustee's fraud claims

should be dismissed because the Trustee fails to plead fraud with particularity.[28]

The Trustee argues that his common law fraud claim "is predicated upon the Defendants' active participation in the fraudulent diversion of assets and in multiple aspects of the Jacobs' fraud perpetrated on Allou and its creditors."  Trustee's Mem. at 4.

The elements of a claim for fraud under New York law are "'(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damages as a result of such reliance.'"  *Eastman Kodak Co. v. Wachovia Bank Nat'l Ass'n*, 2007 WL 2406919, at *4 (W.D.N.Y. 2007) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs. Inc*., 98 F.3d 13, 19 (2d Cir. 1996)).  The Trustee's allegations that the Defendants aided and abetted the Jacobs' fraud or breach of fiduciary duty do not, without more, establish a fraud claim under New York law.  Rather, each of these elements must be pleaded in order for the Trustee's fraud claim to be sustained.  *See Silverman v. K.E.R.U. Realty Corp. (In re Allou Distributors, Inc.)*, 379 B.R. 5, 33-34 (Bankr. E.D.N.Y. 2007).

### *Making a Material False Representation*

The first element of a claim for fraud is that the defendant made a material false representation.  A review of the Amended Complaint shows that it does not allege with the required particularity that any of the Defendants made a material false representation to Allou.

---

[28]  H. Greenfield and the Estate of M. Greenfield also argue that the this claim should be dismissed because the Trustee lacks standing and because it is barred by the applicable statute of limitations.  Estate of M. Greenfield Mem. at 3; H. Greenfield Mem. at 2.  As discussed above, the Court has determined that the Trustee has standing and that these claims are not time-barred.  *See* pp. 16-30, *supra*.

In the absence of this element, it is not necessary for the Court to consider the other elements of this claim, including whether the Defendants intended to defraud Allou, whether the Defendants intended to defraud Allou by their material false representations, whether Allou reasonably relied on the material false representations, or whether Allou suffered damages as a result of its reliance.  *See Eastman Kodak Co.*, 2007 WL 2406919, at *4.  But the Court notes that each of these elements would be required to be alleged for a particular defendant in order for this claim to be sustained as to that defendant.

For these reasons, and based on the entire record, the Court finds that the Amended Complaint does not state a claim for fraud against any of the Defendants.  Accordingly, the Motions to Dismiss the Third Claim for Relief are granted.

Whether the Amended Complaint States Claims Against H.I.L., Tereza, and Morgren for Unjust Enrichment

The Eighth, Twentieth, and Twenty-Eighth Claims for Relief assert claims for unjust enrichment against H.I.L., Tereza, and Morgren.  The Trustee alleges:

> The [H.I.L. Transfers, the Tereza Transfers, and the Morgren Transfers] were . . . impermissible transfer[s] of Allou's funds, a result of which [H.I.L, Tereza, and Morgren] [were] . . . [the] ultimate beneficiar[ies] of such transfers under circumstances in which [they] would be unjustly enriched if [H.I.L., Tereza, and Morgren] were to retain such proceeds since Allou did not receive reasonable equivalent value for such transfers.

> As result of the fraud described herein, [H.I.L., Tereza, and Morgren] [have] been unjustly enriched and may not in equity and good conscience retain the [H.I.L. Transfers, Tereza Transfers, and Morgren Transfers].

Amended Complaint ¶¶ 278-79, 315-16, 346-47.

The Tereza Defendants argue that the unjust enrichment claims are deficient because the Trustee does not allege facts to support his legal conclusions, and because these claims are

duplicative of the fraudulent transfer claims.  Tereza Defendants' Mem. at 51-53.  The Estate of
M. Greenfield similarly argues that the Amended Complaint does not state a claim for unjust
enrichment, and that these claims are duplicative of the Trustee's other claims for relief.  Estate
of M. Greenfield Mem. at 22-24.

The elements of a claim for unjust enrichment under New York law are "(1) that the
defendant benefitted; (2) at the plaintiff's expense; and (3) that 'equity and good conscience'
require restitution."  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal citation
omitted).  The Second Circuit notes that "[t]he 'essence' of such a claim 'is that one party has
received money or a benefit at the expense of another."  *Id.* (quoting *City of Syracuse v. R.A.C.
Holding, Inc.*, 685 N.Y.S.2d 381, 381 (4th Dep't 1999)).

At the outset, the Court notes that Rule 8(a) provides that "[r]elief in the alternative or of
several different types may be demanded."  FED. R. CIV. P. 8(a)(3).  While there can be no doubt
that the Trustee would not be entitled to duplicative relief, there similarly is no doubt that at the
pleadings stage, a plaintiff is not required to elect a single theory upon which to proceed.  For
these reasons, the Trustee's unjust enrichment claims will not be dismissed as duplicative of his
other claims for relief.

A review of the Amended Complaint shows that the Trustee alleges that the Defendants,
as participants in the Jacobs' fraud, received "millions of dollars directly in connection with
fictitious and fraudulent purchases of goods."  Amended Complaint ¶ 146.  Specifically, the
Trustee alleges that "Allou made at least [131] separate transfers totaling no less than
$21,238,492.69 directly to HIL. and that "by prior agreement among HIL and the Jacobs, HIL
did not actually ship any products to Allou and Allou did not received any products from H.I.L.

Consequently, Allou did not receive any consideration for the HIL Transfers . . . ."  Amended Complaint ¶¶ 237, 239.  The Amended Complaint identifies the date, the check or wire transfer number, and the amount of each of the alleged H.I.L. Transfers.  Amended Complaint ¶ 240.

The Trustee also alleges that "Allou made at least [29] separate transfers totaling no less than $11,250,753.73 directly to defendant Tereza" and that "Allou did not receive any fair consideration for the Tereza Transfers . . . ."  Amended Complaint ¶¶ 241-42.  The Amended Complaint identifies the date, the check or wire transfer number, and the amount of each of the alleged Tereza Transfers.  Amended Complaint ¶ 244.

And the Trustee alleges that "Allou made at least [1] separate transfer totaling no less than $600,000.00 directly to . . . Morgren" and that "Allou did not receive any fair consideration for the Morgren Transfer."  Amended Complaint ¶¶ 247-48.  The Amended Complaint identifies the date, the check or wire transfer number, and the amount of the Morgren Transfer.  Amended Complaint ¶ 249.

For these reasons, and based on the entire record, the Court finds that the Amended Complaint states claims for unjust enrichment against H.I.L., Tereza, and Morgren.  Accordingly, the Tereza Defendants' and the Estate of M. Greenfield's Motions to Dismiss the Trustee's Eighth, Twentieth, and Twenty-Eighth Claims for Relief for unjust enrichment are denied.

## <u>Conclusion</u>

For the reasons stated herein, and based on the entire record, the Motions to Dismiss the Amended Complaint are granted in part to the extent that the Trustee's Third Claim for Relief against all of the Defendants is dismissed.  The Trustee may seek leave to replead those claims

65

within sixty days of the date of entry of an order, and if leave is sought, the Trustee is directed to file the proposed amended complaint with his motion.  In all other respects, the Motions to Dismiss are denied.

The Trustee is directed to submit a proposed order in accordance with this Memorandum Decision.

Dated: Brooklyn, New York
        March 31, 2008

_____*s/Elizabeth S. Stong*_____
ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE